# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| ARIES LEGACY, LLC, Delaware corporation, CHRISTIAN CARLSON, DEAN RALPH SALERNO, ECRE1 LLC, an Arizona corporation, HUCKLEBERRY GLAM, INC., an Arizona corporation, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) | Case No: 1:25-cv-02118-VMC |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| INTEGRATED WEALTH STRATEGIES, LLC., a New Jersey Corporation, and JOSEPH C. MANIACI, JR., individually, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

# DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS THIS ACTION PURSUANT TO THE COURT'S AUGUST 13, 2024 ORDER AND <u>FED. R. CIV. P. 12(b)(1), 12(b)(6), AND 12(b)(7)</u>

# <u>TABLE OF CONTENTS</u>

**PAGE**

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ....................................................................................3

I.    THIS ACTION IS AN "ANCILLARY PROCEEDING" UNDER THE RECEIVERSHIP ORDER AND SHOULD BE DISMISSED ......................................................................3

II.    PLAINTIFFS FAILED TO JOIN INDISPENSABLE PARTIES ........5

III.    PLAINTIFFS' CLAIMS UNDER SECTION 12 OF THE SECURITIES ACT OF 1933 MUST BE DISMISSED .....................10

    a.    Plaintiffs' Section 12(a)(2) Claim Fails to Allege Misrepresentations and Omissions in or Directly Related to a Prospectus ........................................................10

    b.    Plaintiffs' Section 12(a)(1) Claim is Untimely ........................11

        i.    Plaintiffs' Section 12(a)(1) Claim was Filed After the Expiry of the Applicable Three-Year Repose Period ..............................................................12

        ii.    Section 12(a)(1) Claims Based on pre-April 17, 2024 REAL Loan Agreements Violate the One-Year Limitations Period ....................................14

IV.    PLAINTIFFS LACK STANDING ......................................15

    a.    Defendants Are Not "Statutory Sellers" of the Alleged Securities ...................................................................17

    b.    Plaintiffs Carlson and Salerno Were Not "Purchasers" of the Alleged Securities ..........................................22

V.    PLAINTIFFS' STATE LAW CLAIMS FAIL TO PLAUSIBLY STATE VALID CAUSES OF ACTION ...........................................22

i

a.      Plaintiffs' NJUSL Claim (Count III) Fails to Plausibly
        Allege a Valid Cause of Action ...................................................22

        i.      Plaintiffs Fail to Assert a NJUSL Fraud Claim.............23

        ii.     Plaintiffs Fail to Plead "Privity," as Required for
                NJUSL Claims...................................................................25

        iii.    Defendants' Failure to Plausibly Allege that
                Defendants are "Sellers" Also Requires Dismissal
                of Their NJUSL claim. ....................................................27

b.      Plaintiffs Fail to Plausibly Allege "Professional
        Negligence/Negligent Misrepresentation" (Count IV).............28

c.      Plaintiffs Fail to Plausibly Allege Breach of Fiduciary
        Duty (Count V) ...........................................................................29

d.      Plaintiffs Fail to Plausibly Allege Unjust Enrichment
        (Count VI)....................................................................................31

e.      Plaintiffs' Common Law Tort Claims Against Maniaci in
        his Individual Capacity Must be Dismissed .............................34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Ohio Cas. Ins. Co.*,
   731 A.2d 48 (N.J. Super. Ct. App. Div. 1999) ...................................................27

*Babin v. Shchekin*,
   No. 16-cv-5722, 2017 WL 403568 (N.D. Ill. Jan. 30, 2017) .............................11

*Ballenger v. Applied Digit. Sols., Inc.*,
   189 F. Supp. 2d 196 (D. Del. 2002)....................................................................13

*Becker v. Mgmt. Servs. Network, LLC*,
   No. 1:07-CV-0028, 2007 WL 9703368 (N.D. Ga. June 20, 2007) ....................22

*In re Biozoom, Inc. Sec. Litig.*,
   93 F. Supp. 3d 801 (N.D. Ohio 2015) ...........................................................13, 14

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ..............................................................................24

*Caspersen v. Oring*,
   441 F. Supp. 3d 23 (D.N.J. 2020).........................................................................24

*Charles Bloom & Co. v. Echo Jewelers*,
   652 A.2d 1238 (N.J. Super. Ct. App. Div. 1995) ................................................35

*In re CNL Hotels & Resorts, Inc.*,
   No. 04-cv-1231, 2005 WL 2291729 (M.D. Fla. Sep. 20, 2005) ........................18

*Cone Corp. v. Fla. Dep't of Transp.*,
   921 F.2d 1190 (11th Cir. 1991) ...........................................................................16

*Craftmatic Sec. Litig. v. Kraftsow*,
   890 F.2d 628 (3d Cir. 1989) ................................................................................17

*CTS Corp. v. Waldburger*,
   573 U.S. 1 (2014)..................................................................................................12

*De Ford v. Koutoulas*,
   348 F.R.D. 724 (M.D. Fla. 2025) ........................................................................15

*DeRobbio v. Harvest Communities of Sioux City, Inc.*,
   No. 01-cv-1120, 2002 WL 31947203 (D.N.J. Oct. 30, 2002)............................23

*In re Deutsche Telekom AG Sec. Litig.*,
   No. 00-cv-9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)...........................17

*Est. of Parr v. Buontempo Ins. Servs.*,
  No. L-2500-06, 2006 WL 8551632 (N.J. Super. Sep. 08, 2006) ......................30

*F.G. v. MacDonnell*,
  696 A.2d 697 (N.J. 1997) ...........................................................................29, 31

*Fedance v. Harris*,
  1 F.4th 1278 (11th Cir. 2021) ...........................................................................12

*Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*,
  859 F.3d 1306 (11th Cir. 2017) ...........................................................................6

*Gonsalvez v. Celebrity Cruises Inc.*,
  750 F.3d 1195 (11th Cir. 2013) .........................................................................11

*Goodman v. Goldman, Sachs & Co.*,
  No. 10-cv-1247, 2010 WL 5186180 (D.N.J. Dec. 14, 2010) ............................30

*Gotham Holdings, LP v. Health Grades, Inc.*,
  534 F. Supp. 2d 442 (S.D.N.Y. 2008) ...............................................................10

*Greenberg v. Pro Shares Tr.*,
  A-0759-10T3, 2011 WL 2636990 (N.J. Super. Ct. App. Div. July
  7, 2011) ..........................................................................................................23, 25

*Gustafson v. Alloyd Co. Inc.*,
  513 U.S. 561 (1995)......................................................................................10, 11

*H. Rosenblum, Inc. v. Adler*,
  461 A.2d 138 (N.J. 1983) ..................................................................................28

*Hardin v. TRON Found.*,
  No. 20-cv-2804, 2024 WL 4555629 (S.D.N.Y. Oct. 23, 2024) ........................14

*Harrell v. Fla. Bar*,
  608 F.3d 1241 (11th Cir. 2010) .........................................................................15

*Hassler v. Sovereign Bank*,
  644 F. Supp. 2d 509 (D.N.J. 2009)....................................................................32

*Hill v. Duscio*,
  No. 16-cv-04767, 2017 WL 10795024 (N.D. Ga. Mar. 31, 2017)......................4

*Institutional Invs. Grp. v. Avaya Inc.*,
  564 F.3d 242 (3d Cir. 2009) ..............................................................................24

*Kane v. Rose*,
  259 F. App'x 258 (11th Cir. 2007).......................................................5, 6, 7, 8, 9

*Kaufman v. i-Stat Corp.*,
    754 A.2d 1188 (N.J. 2000) ................................................................25, 26

*Laker Airways, Inc. v. Brit. Airways, PLC*,
    182 F.3d 843 (11th Cir. 1999) ..........................................................7, 8, 9

*Lalor v. Omtool, Ltd.*,
    No. 99-cv-469M, 2000 WL 1843247 (D.N.H. Dec. 14, 2000) .........................18

*Lawrence v. Dunbar*,
    919 F.2d 1525 (11th Cir. 1990) ......................................................16, 19

*Lewis v. Casey*,
    518 U.S. 343 (1996)..........................................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..........................................................................16

*Liberty One Funding Tr. v. Achenbach*,
    No. 23-cv-5483, 2025 WL 504488 (N.D. Ga. Jan. 27, 2025) ..........................16

*Licht v. Watson*,
    567 F. App'x 689 (11th Cir. 2014)......................................................22

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
    No. 12-cv-03694, 2014 WL 3417941 (N.D. Cal. July 11, 2014),
    *aff'd*, 653 F. App'x 553 (9th Cir. 2016) ................................................25, 26, 27

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..........................................................................15

*McAdam v. Dean Witter Reynolds, Inc.*,
    896 F.2d 750 (3rd Cir. 1990) ..............................................................30

*McGlynn v. Schultz*,
    231 A.2d 386 (N.J. Super. Ct. App. Div. 1967) ................................................35

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010) ..............................................................17

*Moser v. Milner Hotels, Inc.*,
    6 N.J. 278 (1951) ............................................................................32

*In re Nat'l Reality Inv. Advisors, LLC*,
    No. 22-br-14539, 2024 WL 4481067 (Bankr. D.N.J. Oct. 11, 2024) ...............27

*In re ORFA Sec. Litig.*,
    654 F. Supp. 1449 (D.N.J. 1987)..........................................................29

*P. Stolz Fam. P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004) ...........................................................................12, 13

*Pabon v. Hackensack Auto Sales, Inc.*,
   164 A.2d 773 (N.J. Super. Ct. App. Div. 1960) ................................................28

*Pinter v. Dahl*,
   486 U.S. 622 (1988)................................................................................*passim*

*Quinn v. Powell*,
   No. 21-cv-03163, 2024 WL 1395153 (N.D. Ga. Mar. 31, 2024).........................7

*Reinart v. Medicus Auri LLC*,
   No. 20-cv-0437, 2021 WL 11962853 (W.D. Okla. Feb. 16, 2021) ...................11

*Rensel v. Centra Tech, Inc.*,
   No. 17-cv-24500, 2019 WL 2085839 (S.D. Fla. May 13, 2019) .......................18

*Robsac Indus., Inc. v. Chartpak*,
   497 A.2d 1267 (N.J Super. Ct. App. Div. 1985) ................................................35

*Roll v. Singh*,
   No. 07-cv-4136, 2008 WL 3413863 (D.N.J. June 26, 2008), *as
   amended* (Apr. 12, 2010) ...............................................................................26

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*,
   374 F.3d 1020 (11th Cir. 2004) ........................................................................23

*Rupert v. Winter*,
   No. 10-cv-0799, 2012 WL 13102348 (N.D. Tex. Jan. 24, 2012).........................5

*Ryder Int'l Corp. v. First Am. Nat. Bank*,
   943 F.2d 1521 (11th Cir. 1991) ........................................................................18

*S.E.C. v. Alleca*,
   No. 12-cv-3261, 2018 WL 2278258 (N.D. Ga. May 18, 2018) ..........................4

*S.E.C. v. Elliott*,
   953 F.2d 1560 (11th Cir. 1992) ..........................................................................3

*Saltiel v. GSI Consultants, Inc.*,
   788 A.2d 268 (N.J. 2002) ............................................................................34, 35

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip
   Morris Companies, Inc.*,
   75 F.3d 801 (2d Cir. 1996) ...............................................................................24

*SEC v. Drive Planning, LLC. et al.*,
   No. 24-cv-03583 ................................................................................................3

*SEC v. Drive Planning, LLC, et al.*,
 No. 24-cv-04584 ....................................................................................................4

*Shain v. Duff & Phelps Credit Rating Co.*,
 915 F. Supp. 575 (S.D.N.Y. 1996) ....................................................................18

*Shalita v. Twp. of Washington*,
 270 N.J. Super. 84 (App. Div. 1994) ..................................................................32

*Snyder v. Farnam Cos.*,
 792 F. Supp. 2d 712 (D.N.J. 2011) .....................................................................32

*St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*,
 No. 04-cv-4540, 2005 WL 1199045 (D.N.J. May 18, 2005) .............................29

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
 No. 00 CIV. 8058, 2011 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ....................17

*Steusloff v. Finelli*,
 No. 23-cv-207, 2024 WL 470251 (N.D. Ga. Jan. 2, 2024) ..................................6

*Suna v. Bailey Corp.*,
 107 F.3d 64 (1st Cir. 1997)..................................................................................24

*Thompson v. RelationServe Media, Inc.*,
 610 F.3d 628 (11th Cir. 2010) ............................................................................10

*Tuchman v. DSC Commc'ns Corp.*,
 14 F.3d 1061 (5th Cir. 1994) ..............................................................................25

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
 524 F.3d 1229 (11th Cir. 2008) ..........................................................................16

*Van Dam Egg Co. v. Allendale Farms*,
 489 A.2d 1209 (N.J. Super. Ct. App. Div. 1985) ..............................................35

*VRG Corp. v. GKN Realty Corp.*,
 641 A.2d 519 (N.J. 1994) .............................................................................32, 33

*Wanaque Borough Sewerage Auth. v. Twp. of West Milford*,
 677 A.2d 747 (N.J. 1996) ....................................................................................32

*Wexner v. First Manhattan Co.*,
 902 F.2d 169 (2d Cir. 1990) ................................................................................25

*Wiley v. Hughes Cap. Corp.*,
 746 F. Supp. 1264 (D.N.J. 1990).........................................................................23

*Yates v. Mun. Mortg. & Equity, LLC*,
 744 F.3d 874 (4th Cir. 2014) ..............................................................................11

*Youngers v. Virtus Inv. Partners, Inc.*,
  195 F. Supp. 3d 499 (S.D.N.Y. 2016) ................................................................21

*Yung v. Lee*,
  432 F.3d 142 (2d Cir. 2005) ............................................................................10

*Zakinov v. Ripple Labs, Inc.*,
  No. 18-cv-06753, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020).........................12

*Zendell v. Newport Oil Corp.*,
  544 A.2d 878 (N.J. Super. Ct. App. Div. 1988) ..........................................27, 28

## Statutes

15 U.S.C.A. § 77m.................................................................................12, 13, 14, 15

15 U.S.C. § 77l(a)(1).........................................................................................2

15 U.S.C. § 77l(a)(2).........................................................................................2

N.J. Stat. Ann. 49:3-55......................................................................................23

N.J. Stat. Ann. 49:3-56......................................................................................23

N.J. Stat. Ann. 49:3-60......................................................................................23

N.J. Stat. Ann. 49:3-71(a)(1) .......................................................................23, 25

N.J. Stat. Ann. 49:3-71(a)(2).............................................................................23

N.J. Stat. Ann. 49:3-71(a)(2)(5)........................................................................25

N.J. Stat. Ann. 49:3-71(b)(1)–(2)......................................................................23

## Other Authorities

Fed. R. Civ. P. 9(b) ..........................................................................................24

Fed. R. Civ. P. 12(b)(1).................................................................................16, 19

Fed. R. Civ. P. 12(b)(6)......................................................................................11

Fed. R. Civ. P. 12(b)(7)........................................................................................6

Fed. R. Civ. P. 12(h)(3)......................................................................................23

Fed. R. Civ. P. 19(a)...........................................................................................7

Fed. R. Civ. P. 19(b) .......................................................................................6, 8

## PRELIMINARY STATEMENT[1]

This is a "copycat" case. Plaintiffs summon allegations from the Securities and Exchange Commission's ("SEC") action against alleged Ponzi schemers Drive Planning LLC ("Drive Planning") and its executives (the "SEC Action") and misdirect those allegations toward defendants Integrated Wealth Strategies, LLC ("IWS") and Joseph C. Maniaci, Jr. ("Maniaci", together with IWS "Defendants"), who according to those same SEC filings were misled by Drive Planning just as Plaintiffs were. In doing so, Plaintiffs' cut-and-paste allegations result in myriad deficiencies that warrant dismissal of the Amended Complaint.

Preliminarily, this action violates the Court's August 13, 2024 receivership order (the "Receivership Order") entered in the SEC Action, which bars claims—like Plaintiffs' claims—involving Drive Planning, its property "wherever located," and its prior "agents." This case also should be dismissed for failure to join Drive Planning and its executives, who are indispensable parties and cannot be joined because of the Receivership Order. That Order mandates dismissal or a stay.

In all events, Plaintiffs' claims are insufficiently pled, untimely, or both.

---

[1] On July 18, 2025, Defendants filed a Motion for Leave to File Two Motions pursuant to § III.m. of the Court's Standing Order and a Motion to File Excess Pages pursuant to § III.r. of the Standing Order for this brief. Docket Entry ("D.E.") 21. Plaintiffs opposed that motion but indicated their consent to Defendants filing one brief with a page expansion of 10-pages. In view of Plaintiffs' position, Defendants respectfully submit this brief, which is consistent with Plaintiffs' consent and filed subject to the Court's grant of Defendants' modified request for excess pages.

**Count I** (Section 12(a)(2), 15 U.S.C. § 77l(a)(2)) fails to allege that misrepresentations of fact were made in a "prospectus," and **Count II** (Section 12(a)(1), 15 U.S.C. § 77l(a)(1)) is untimely under the applicable 3-year repose and 1-year limitations periods. Plaintiffs also lack standing to assert the Section 12 claims because defendants were not "statutory sellers" and, in addition, Plaintiffs Salerno and Carlson never purchased the alleged securities in their individual capacities. The Court should dismiss the Section 12 claims and, with no other basis for federal subject matter jurisdiction, the balance of Plaintiff's claims.

If the Court were to reach the merits of Plaintiffs' state law claims, it would find that they fail for additional reasons:

- **Count III** (N.J. Uniform Securities Act) fails to adequately plead scienter, "privity" as required under New Jersey law, and/or that defendants are "sellers" of securities.

- **Count IV** (Professional Negligence/Negligent Misrepresentation) and **Count V** (Breach of Fiduciary Duty) both fail to plausibly allege a duty to Plaintiffs, a breach, or that defendants even *could* have detected the concealed fraud even had there been a duty.

- **Count VI**[2] (Unjust Enrichment) fails to allege that *Plaintiffs* conferred a benefit upon *Defendants* for which they expected remuneration. An unjust enrichment claim does not fit this matter and must be dismissed.

Plaintiffs assert no plausible allegations that establish personal liability against

---

[2] Plaintiffs' unjust enrichment claims is misnumbered in the Amended Complaint as "Count VIII," instead of "Count VI." This Motion will refer to the unjust enrichment claim as "Count VI."

Maniaci for the common law torts. For these reasons, the Amended Complaint should be dismissed entirely as untimely and insufficiently pled, or stayed.

## **ARGUMENT**

### I.    THIS ACTION IS AN "ANCILLARY PROCEEDING" UNDER THE RECEIVERSHIP ORDER AND SHOULD BE DISMISSED

This action was initiated and maintained in violation of the injunction and stay provisions of this Court's August 13, 2024 Receivership Order entered in the SEC Action.[3] That Order enjoins and stays all "Ancillary Proceedings." It defines an "Ancillary Proceeding" as "[a]ll civil legal proceedings of any nature, including, but not limited to" actions "involving" either "***Receivership Property***,[4] wherever located," the "***Receivership Defendant***,"[5] (Drive Planning) or the Drive Planning's "***past or present . . . agents***." Moran Decl., Ex. A, ¶ 32. Because this action "involve[s]" all three—Drive Planning, its property, and its alleged prior agents—it is an Ancillary Proceeding and must be dismissed. *See S.E.C. v. Elliott*, 953 F.2d

---

[3] *See SEC v. Drive Planning, LLC. et al.*, No. 24-cv-03583 (the "SEC Action") at D.E. 10, Declaration of Eric W. Moran ("Moran Decl."), Ex. A, ¶ 32 (enjoining and staying any "Ancillary Proceeding"); *id.*, ¶¶ 33–34 (prohibiting issuance of legal process to Drive Planning).

[4] "Receivership Property" includes "all property interests of" Drive Planning, including but not limited to "moneys, . . . credits, . . . claims, rights and other assets, . . . or other income attributable thereto, of whatever kind, which the Receivership Defendant . . . has a beneficial interest in." Moran Decl., Ex. A, ¶ 7.A.

[5] The "Receivership Defendant" means Drive Planning, LLC. Moran Decl., Ex. A, ¶ 1.

1560, 1566 (11th Cir. 1992); *S.E.C. v. Alleca*, No. 12-cv-3261, 2018 WL 2278258, at *3 (N.D. Ga. May 18, 2018); *Hill v. Duscio*, No. 16-cv-04767, 2017 WL 10795024, at *1–2 (N.D. Ga. Mar. 31, 2017).

The Amended Complaint "involves" Drive Planning's former "agents" because Plaintiffs' cornerstone allegation is that IWS and Maniaci are former "agents" of Drive Planning in marketing securities. Am. Compl., ¶ 4 ("IWS, and others employed at IWS *became agents of Drive Planning*"); *id.*, ¶ 5 ("*agents of Drive Planning*"); *id.*, ¶ 27 ("*sales agents, including IWS and Maniaci*"); *id.*, ¶ 30 ("*sales agents such as IWS and Maniaci*"). The Amended Complaint "involves" Drive Planning itself because it is replete with allegations that Drive Planning and its executives perpetrated a Ponzi scheme, which they concede[6] will require the fact finder to confront the same issues as in the SEC Action. Finally, the Amended Complaint "involves" Drive Planning's property because Plaintiffs seek the recovery of "any fees, commissions or other compensation that they received in connection with causing Plaintiffs to enter into the REAL agreements." *Id.*, at 29, ¶ 2; *id.*, at 31, ¶ 2 (seeking "disgorgement of profits obtained by Defendants as a result of their acts of unjust enrichment"); *id.* ¶ 127 (alleging those "profits" came from

---

[6] Plaintiffs' Civil Case Information Statement identifies the SEC Action as a "Related Case" because this case presents the "SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN" the SEC Action. D.E. 1-10 at 2 (citing *SEC v. Drive Planning, LLC, et al.*, No. 24-cv-04584).

Drive Planning "in the form of sales commissions and awards" to IWS). The Receiver, too, has taken the position that Drive Planning has a beneficial interest in all commissions received by financial advisors, and that those transfers should be voided under the Georgia Uniform Voidable Transaction Act. Moran Decl., Ex. B at 11–12; Ex. C at 12–13.

As an Ancillary Proceeding involving Drive Planning, its former agents, and its property in the hands of those former agents, the Amended Complaint should be dismissed. *See Kane v. Rose*, 259 F. App'x 258, 260 (11th Cir. 2007) (affirming district court's dismissal of investor's claims against a securities broker "agent" of a collapsed Hedge Fund in SEC receivership because those claims "were currently enjoined by the stay"); *see also Rupert v. Winter*, No. 10-cv-0799, 2012 WL 13102348, at *7 (N.D. Tex. Jan. 24, 2012).  In the alternative, the matter should be stayed, as several courts have done nationwide at the Receiver's urging in lawsuits filed against Drive Planning *and its former agents*. Moran Decl., Ex. C at 30–32 (Receiver's Fourth Status Report, dated July 30, 2025, describing claims filed against Drive Planning and its agents/employees that have been stayed).

## II.    PLAINTIFFS FAILED TO JOIN INDISPENSABLE PARTIES

While Plaintiffs have cast Drive Planning and its CEO Russell Todd Burkhalter (the "Drive Planning Parties") in leading roles in the Amended Complaint, they have not and cannot join them because of the Receivership Order's

injunction. Am. Compl., ¶ 6 ("[A] pending injunction [] prohibits actions against them by investors in the pending SEC Action."). Where a party should be joined but joinder is infeasible, and that party's absence causes prejudice under the factors set forth in Rule 19(b), then dismissal is proper. *See Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017); *Steusloff v. Finelli*, No. 23-cv-207, 2024 WL 470251, at *2–3 (N.D. Ga. Jan. 2, 2024). So it is here.

The Eleventh Circuit has affirmed dismissal for failure to join an indispensable party in these very circumstances. In *Kane*, the plaintiff sued defendant Rose, a securities broker, in connection with her investment in a collapsed Florida hedge that was in the midst of an SEC-initiated receivership. 259 F. App'x at 259. Kane alleged that Rose acted as an "agent or employee of KL in advising Kane to invest in the fund" and, like the Plaintiffs in this case, brought federal and state securities and negligent misrepresentation claims. *Id.* The district court granted defendant's motion to dismiss, concluding that the suit not only was barred by the receivership stay, but also that dismissal was proper under Rule 12(b)(7): "because *the stay rendered infeasible the joinder of the entities in receivership, who were indispensable parties to the Rose–Kane action*." *Id.* at 260 (emphasis added). In affirming[7] the dismissal, the Eleventh Circuit held that the district court "concluded,

---

[7] The Eleventh Circuit modified the district court's ruling only to clarify that the dismissal should be "without prejudice" because the receivership "anti-suit

correctly, that all of Kane's claims were currently enjoined by the stay *and that the stay rendered infeasible the joinder of necessary parties*." *Id.* (emphasis added). The same outcome is warranted in this strikingly similar case.

The Drive Planning Parties are necessary parties under Rule 19(a). *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999) ("A party is considered 'necessary' to the action if the court determines either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings." (citation omitted)); *Quinn v. Powell*, No. 21-cv-03163, 2024 WL 1395153, at *5 (N.D. Ga. Mar. 31, 2024). The Drive Planning Parties' conduct is core to the Amended Complaint, and each of Plaintiffs' claims depends on the allegation that Drive Planning perpetrated a Ponzi scheme. Plaintiffs' allegation that Defendants were "agents" of Drive Planning are the same allegations that caused the Eleventh Circuit in *Kane* to affirm dismissal because the receivership parties in that case were "necessary" and "indispensable." *Kane*, 259 F. App'x at 260. Complete relief cannot be granted in Drive Planning's absence.

Failing to join the Drive Planning Parties would impair and impede the interests of the Drive Planning Parties and, thus, the Receiver. Plaintiffs' claims involve myriad issues in which the Receiver has a keen interest: Were Drive

_____

injunctions will last only for the duration of the receivership case. Kane is not, and will not be, enjoined from suing Rose thereafter." *Id.* at 261.

Planning's statements false when made? Were they material? Was there a duty to disclose information? Are Defendants "statutory sellers"? Are the REAL Loan Agreements "securities"? These and other common issues impact the rights and interests of both the Drive Planning Parties and the Receiver; resolving these issues in their absence would prejudice those interests.

Joinder of the Drive Planning Parties is infeasible because the Receivership Order prohibits it. *See* Moran Decl., Ex. A, ¶ 32 (enjoining and staying any "Ancillary Proceeding"); *id.* ¶¶ 33–34 (prohibiting issuance of legal process to Drive Planning); *see also Kane*, 259 F. App'x at 260.

Under the Rule 19(b) factors, this matter cannot in "equity and good conscience" proceed absent the Drive Planning Parties. *Laker Airways, Inc.*, 182 F.3d at 84. *First*, proceeding with this litigation would adversely impact the interests of non-joined parties because Plaintiffs have sued Defendants as "agents" of the Drive Planning. Where, as here, Plaintiffs seek to hold Defendants accountable for the conduct of Drive Planning, which cannot be joined, equity and good conscience requires dismissal. *Second*, litigating in this matter the myriad issues present in the SEC Action, as discussed *supra*, would be duplicative, and would prejudice the Drive Planning Parties and the Receiver. *Third*, litigating this matter without the ability to even serve process upon the Drive Planning Parties, which the Receivership Order prohibits, would leave the parties to this matter unable fairly to

8

investigate claims and defenses. *Fourth*, adequate relief cannot be afforded absent the primary actors—the Drive Planning Parties—who are anything but "routine joint tortfeasors." *Laker Airways, Inc.*, 182 F.3d at 848 (holding joint tortfeasor to be indispensable party where its involvement goes beyond that of a "routine joint tortfeasor" and "emerges as an active participant" in the allegations made that is "critical to the disposition of the important issues in the litigation."). *Fifth*, allowing this matter to proceed would leave IWS to defend against claims by two parties (Plaintiffs and the Receivers), who are simultaneously asserting two separate claims for the same money (monies Drive Planning paid to IWS), under the same legal theory (unjust enrichment). *See* Moran Decl., Ex. B at 11–12; Ex. C at 12–13; Ex. D (July 1, 2025 demand letter from Receiver to IWS). *Finally*, dismissal for nonjoinder does not leave Plaintiffs without redress. As the Eleventh Circuit reasoned in affirming dismissal in a virtually identical case, "if [the plaintiff] cannot be made whole through a claim against the [SEC] receivership, and can state a cause of action against [the defendant] individually after the receivership is wound up or after obtaining relief from the stay," then suit would be appropriate; but not before. *Kane*, 259 F. App'x at 261. Plaintiffs have the same option here.

### III.   PLAINTIFFS' CLAIMS UNDER SECTION 12 OF THE SECURITIES ACT OF 1933 MUST BE DISMISSED

#### a.   Plaintiffs' Section 12(a)(2) Claim Fails to Allege Misrepresentations and Omissions in or Directly Related to a Prospectus

Plaintiffs' Section 12(a)(2) claim fails because the alleged misrepresentations or omissions were not contained in or related to a prospectus. Section 12(a)(2) provides that "[a]ny person who . . . offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact . . . shall be liable . . . to the person purchasing such security from him . . . ."  A prospectus under Section 12(a)(2) "is confined to documents related to public offerings by an issuer or its controlling shareholders." *Gustafson v. Alloyd Co. Inc.*, 513 U.S. 561, 569 (1995). "[T]he phrase, 'oral communication' is restricted to oral communications that relate to a prospectus." *Id.* at 567–68. Thus, a Section 12(a)(2) claim requires that the misrepresentations or omission are either contained in or relate directly to a prospectus. *Id.* at 581; *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 677 n.69 (11th Cir. 2010); *Yung v. Lee*, 432 F.3d 142, 147 (2d Cir. 2005); *Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442, 444 (S.D.N.Y. 2008) ("[A]n essential element of [a] § 12(a)(2) claim is that the omissions or misrepresentations being sued upon are either contained in or related directly to a prospectus.").

Plaintiffs do not allege misrepresentations in or related to a prospectus;

indeed, they concede that "[n]either Plaintiffs nor Defendants had access to the type of information normally provided in a prospectus of a SEC registration Statement such as Form S-1." Am. Compl., ¶ 85 (Count I, Section 12(a)(2) claim); *id.* ¶ 97 (same allegation with respect to Count II, the Section 12(a)(1) claim). This allegation fails to establish a misrepresentation or omission contained in or related directly to a "prospectus." *See*, *e.g.*, *Reinart v. Medicus Auri LLC*, No. 20-cv-0437, 2021 WL 11962853, at *5 (W.D. Okla. Feb. 16, 2021) (dismissing § 12(a)(2) claims where plaintiffs alleged only that "[d]efendants did not comply with the registration or prospectus requirements contained in Section 5 of the Securities Act prior to soliciting [Plaintiff] for his Investment"). Plaintiffs' claim is thus deficient and must be dismissed. *See Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 899 (4th Cir. 2014) ("[B]ecause 'prospectus' is a term of art referring to a specific document in a public offering, sales made pursuant to private contracts are not made by means of a prospectus." (quoting *Gustafson*, 513 U.S. at 580–84)); *Babin v. Shchekin*, No. 16-cv-5722, 2017 WL 403568, at *6–7 (N.D. Ill. Jan. 30, 2017) (dismissing § 12(a)(2) claim for failure to allege sale of a security pursuant to a prospectus as that term is defined by the Supreme Court (collecting cases)).

### b. Plaintiffs' Section 12(a)(1) Claim is Untimely

Rule 12(b)(6) dismissal is appropriate "if it is apparent from the face of the complaint that the claim is time-barred." *Gonsalvez v. Celebrity Cruises Inc.*, 750

F.3d 1195, 1197 (11th Cir. 2013). Such is the case here.

Plaintiffs' Section 12(a)(1) claim is untimely. Section 77m bars any action that is commenced more than: (1) three years after the alleged security was "bona fide offered to the public"; or (2) one year after the sale of the alleged security. 15 U.S.C.A. § 77m. The Complaint was filed more than three years after the REAL Loan Agreements allegedly were offered publicly. Only two sale transactions occurred within one-year of Plaintiffs' complaint. Thus, dismissal is appropriate.

### i. *Plaintiffs' Section 12(a)(1) Claim was Filed After the Expiry of the Applicable Three-Year Repose Period*

Section 77m states that "[i]n no event" shall a claim be brought "more than three years after the security was bona fide offered to the public," making it a statute of repose. As a statute of repose, the three-year period under Section 77m is "a creature of legislative supremacy that operates independent of equitable concerns." *Zakinov v. Ripple Labs, Inc.*, No. 18-cv-06753, 2020 WL 922815, at *7 (N.D. Cal. Feb. 26, 2020); *P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004) ("[A] statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." (citations omitted)). The three-year repose period "may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control." *Fedance v. Harris*, 1 F.4th 1278, 1284 (11th Cir. 2021) (quoting *CTS Corp. v.*

*Waldburger*, 573 U.S. 1, 9 (2014)) (internal quotation marks omitted). Neither equitable tolling, the discovery rule, nor re-accrual of the limitations period based on the conduct of others can extend the date of accrual of the 3-year repose period. Indeed, courts have expressly rejected arguments that the repose period under Section 77m accrued at the time of *last* offering of the securities to the public (as opposed to the *first* offering), *Ballenger v. Applied Digit. Sols., Inc.*, 189 F. Supp. 2d 196, 199–200 (D. Del. 2002), a new distribution of the same security, *In re Biozoom, Inc. Sec. Litig.*, 93 F. Supp. 3d 801, 816 (N.D. Ohio 2015), or registration of the security, *P. Stolz Family P'ship*, 355 F.3d at 99.

The phrase "bona fide offered to the public" means that the three-year repose period begins when the unregistered security is first offered for sale to the public. *Id.* ("The relevant question for § 13 is when was the stock really and truly (genuinely) being offered to the public . . . [which] makes considerable sense in the context of unregistered securities.").

Plaintiffs claim the REAL loan opportunity first was offered to the public in 2020. *See* Am. Compl., ¶ 24 ("***In 2020***, Drive Planning began offering to the public" the "Real Estate Acceleration Loan opportunity." (emphasis added)); *see also* ¶¶ 23, 32. Because Drive Planning first offered the REAL Loan opportunity on September 22, 2020, Section 77m's three-year repose period began to run then, and expired three years later on September 22, 2023, and any Section 12(a)(1) claim filed after

September 22, 2023, is untimely. Accordingly, Plaintiff's Section 12(a)(1) claim, filed on April 17, 2025, must be dismissed.

### ii. *Section 12(a)(1) Claims Based on pre-April 17, 2024 REAL Loan Agreements Violate the One-Year Limitations Period*

Section 77m states that "[n]o action shall be maintained to enforce any liability created . . . under section 77l(a)(1) of this title, unless brought *within one year after the violation upon which it is based*." (emphasis added).[8] The "violation upon which [the action] is based" means the purchase by the plaintiff of the securities at issue. *In re Biozoom*, 93 F. Supp. 3d at 810 ("[T]he violation occurs when a prospective buyer actually purchases the securities"); *see also Hardin v. TRON Found.*, No. 20-cv-2804, 2024 WL 4555629, at *10 (S.D.N.Y. Oct. 23, 2024) ("[T]he one-year statute of limitations begins to run from the plaintiff's purchase of the unregistered security.").

Plaintiffs sued on April 17, 2025, more than one-year after almost every alleged transaction. In paragraph 56 and Exhibit H of the Amended Complaint,

---

[8] Unlike Section 77m's one-year limitations period for Section 12(a)(2) claims, the one-year limitations period applicable to claims brought under Section 12(a)(1) contains no "discovery rule" that would postpone accrual until a plaintiff's discovery of the misrepresentations. *Compare* Section 12(a)(2)'s limitations period barring claims "unless brought within one year after ***the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence***" *with* Section 12(a)(1)'s limitation period barring claims "unless brought within one year after ***the violation upon which it is based***." 15 U.S.C.A. § 77m (emphasis added). Thus, no "discovery rule" applies to the limitations period applicable to a Section 12(a)(1) claim.

Plaintiffs summarize their alleged security purchases as follows:

| Summary of Alleged Purchases from Paragraph 56 of the Complaint With Respective one-year Limitations Periods under Section 77m | | | |
|---|---|---|---|
| Owner | Purchase Date | Amount | Expiry of 1-year Limitations Period |
| Aries Legacy, LLC | October 24, 2023 | $400,000 | October 24, 2024 |
| IRAR Trust FBO Dean Ralph Salerno | October 26, 2023 | $75,100 | October 26, 2024 |
| Aries Legacy, LLC | January 18, 2024 | $590,000 | January 18, 2025 |
| Aries Legacy, LLC | February 21, 2024 | $100,000 | February 21, 2025 |
| ECRE1, LLC | March 1, 2024 | $55,000 | March 1, 2025 |
| Aries Legacy, LLC | March 7, 2024 | $245,000 | March 7, 2025 |
| Huckleberry Glam, Inc. | March 21, 2024 | $120,000 | March 21, 2024 |
| Aries Legacy, LLC | March 25, 2024 | $150,000 | March 25, 2025 |
| Aries Legacy, LLC | April 18, 2024 | $105,000 | April 18, 2025 |
| Aries Legacy, LLC | June 5, 2024 | $100,000 | June 5, 2025 |

Under Section 77m's one-year limitations period, any Section 12(a)(1) claim that is based on a REAL Loan Agreement signed more than one year before the time of filing (shaded in red above) is untimely. Thus, all Section 12(a)(1) claims asserted by Plaintiffs Salerno, ECRE1, LLC ("ECRE1"), and Huckleberry Glam, Inc. ("Huckleberry"), and all pre-April 17, 2024 purchases by Aries Legacy, LLC ("Aries"), are untimely.

## IV.    PLAINTIFFS LACK STANDING

To sufficiently plead Article III standing, a plaintiff must plausibly allege "general factual allegations of injury resulting from the defendant's conduct." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *De Ford v. Koutoulas*, 348 F.R.D. 724, 734 (M.D. Fla. 2025); *Harrell v. Fla. Bar*, 608 F.3d 1241, 1253 (11th Cir.

2010). In a class action, named plaintiffs must allege "that they personally have been injured"; it is not enough to allege that "injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation omitted). "Statutory standing," by contrast, seeks to "ascertain, as a matter of statutory interpretation, the scope of the private remedy created by Congress . . . and the class of persons who could maintain a private damages action under that legislatively conferred cause of action." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (cleaned up).

Because standing is jurisdictional, Rule 12(b)(1) is the appropriate procedural mechanism to raise it. *See Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). A defendant can move under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction by either a "facial" or "factual" attack. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). While a "facial" attack requires the court to consider the allegations in the complaint, taken as true, a "factual" attack challenges subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony. *Id.* at 1232–33*; Liberty One Funding Tr. v. Achenbach*, No. 23-cv-5483, 2025 WL 504488, at *3 (N.D. Ga. Jan. 27, 2025); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (recognizing that a court in a "factual" attack may "weigh the evidence" to assess

16

"its very power to hear the case").

Plaintiffs lack standing because (a) Defendants are not "statutory sellers" under Section 12 of the Securities Act; and, in all events, (b) the individual Plaintiffs never "purchased" the alleged securities.

### a. Defendants Are Not "Statutory Sellers" of the Alleged Securities

Liability under Section 12 is limited to a narrow set of participants in securities transactions: "statutory sellers." *Pinter v. Dahl*, 486 U.S. 622, 643–47, 644 n.21 (1988). A statutory seller is one who either (1) "passed title, or other interest in the security, to the buyer for value," or (2) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities['] owner." *Id.* at 642, 647; *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010).

Plaintiffs' only possible basis to allege Defendants were "statutory sellers" is that they "successfully solicited" the "purchase" of a security. To adequately plead "solicitation" under *Pinter*, a plaintiff must allege (1) "direct contact" with the defendant, *In re Deutsche Telekom AG Sec. Litig.*, No. 00-cv-9475, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002); (2) defendant's "*direct and active participation in the solicitation of the immediate sale*," *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 636 (3d Cir. 1989); and (3) that the plaintiff "purchased the securities *as a result of [that] solicitation*," *Steed Fin. LDC v. Nomura Sec. Int'l,*

17

*Inc.*, No. 00 CIV. 8058, 2011 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001) (emphasis added); *see also In re CNL Hotels & Resorts, Inc.*, No. 04-cv-1231, 2005 WL 2291729, at *5 (M.D. Fla. Sep. 20, 2005). Mere "substantial involvement" in the alleged transaction is not enough. *Pinter*, 486 U.S. at 651 (rejecting use of the "substantial factor" test). "[M]erely assist[ing] in another's solicitation efforts" also is insufficient. *Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 581 (S.D.N.Y. 1996) (quoting *Pinter*, 486 U.S. at 651 n.27). "[R]emote" involvement, or mere "participat[ion] in soliciting the purchase" of a security, also is insufficient to confer Section 12 liability. *See Pinter*, 486 U.S. at 651 n.27. Conclusory allegations that a defendant "solicited" the sale of stock and was motivated by financial gain will not do. *In re CNL Hotels*, 2005 WL 2291729, at *5 (citing *Lalor v. Omtool, Ltd.*, No. 99-cv-469M, 2000 WL 1843247, at *8 (D.N.H. Dec. 14, 2000)).

Applying these standards, the Eleventh Circuit has held that providing financial information concerning the availability of commercial paper for sale and the execution of the customer's orders, for example, was insufficient to render a bank to be a statutory seller. *Ryder Int'l Corp. v. First Am. Nat. Bank*, 943 F.2d 1521, 1521 (11th Cir. 1991). To assert a Section 12 claim under the theory that a defendant "successfully solicited" the plaintiff, a plaintiff must plausibly plead a causative effect between the defendant's solicitation and the plaintiff's purchase. *Rensel v. Centra Tech, Inc.*, No. 17-cv-24500, 2019 WL 2085839, at *3 (S.D. Fla. May 13,

18

2019) (rejecting plaintiffs' argument that "that causation is not a necessary element under Section 12"). Plaintiffs have failed to adequately plead this theory.

Plaintiffs' general allegations that Defendants furnished them one-pager Drive Planning marketing documents and website links are insufficient. In his declaration[9] filed in the SEC Action, Plaintiff Carlson stated he learned about Drive Planning from his "friend" and "became interested [in] the REAL program when [he] learned that my friend was receiving the returns Drive Planning had promised to him." Moran Decl., Ex. E, ¶ 2. Plaintiff Carlson attended a videoconference with Drive Planning on December 1, 2022. Am. Compl., Ex. G at 5 (Dec. 1, 2022 email from David Bradford ("Bradford") to Plaintiff Carlson referring to "the time you took in covering the material on the real estate backed opportunities" and providing web links to REAL Loan Agreement applications). During that call, Plaintiff Carlson spoke with both Burkhalter and Bradford from Drive Planning, who "explained the REAL program to me," and "guaranteed me a 10% return every three months" with opportunities to "roll my investment over for additional three-month periods" resulting in "more than a 40% return each year." Moran Decl., Ex. E, ¶ 4. Burkhalter

---

[9] Plaintiff Carlson's declaration is properly considered for the limited purpose of deciding Defendants' motion to dismiss for lack of subject matter jurisdiction (standing) filed pursuant to Rule 12(b)(1) without the need to convert the motion into one for summary judgment under Rule 56. *See Lawrence*, 919 F.2d at 1529 (recognizing the trial court's substantial authority to "weigh the evidence and satisfy itself as to the existence of its power to hear the case").

and Bradford told Carlson that "Drive Planning would use investor money to make bridge loans to property developers and/or be used to enter into joint ventures with property developers," and that "all loans Drive Planning makes are secured by the real estate of the property developers." *Id.* Because Plaintiff Carlson "wanted to make sure that [Drive Planning] was not a Ponzi scheme," he "specifically asked" Burkhalter and Bradford:

> whether Drive Planning used investor funds to pay returns to other investors. Both Mr. Burkhalter and Mr. Bradford told me that Drive Planning did not use investor funds to pay returns to other investors.

*Id.* Based on the representations of Burkhalter and Bradford, as well as a brochure he reviewed on Drive Planning's website, Plaintiff Carlson "invested in the REAL program." *Id.*, ¶ 8. In his sworn declaration, Carlson made no mention of Defendants.

Following his direct interaction with Drive Planning, Carlson applied for and negotiated REAL Loan Agreements between his entities, Plaintiffs ECRE1 and Huckleberry, and Drive Planning. Am. Compl., Ex. H at 6, 8 (REAL Loan Agreements with Plaintiffs ECRE1 and Huckleberry). Each agreement was on Drive Planning letterhead, identified the respective Plaintiff as "Lender," and was signed by Burkhalter, and not IWS or Maniaci.

Plaintiff Salerno, too, interfaced directly with Drive Planning. Salerno emailed Drive Planning to set up his account and make direct payment to Drive Planning. *See* Am. Compl., Ex. F (October 2023 email chain between Plaintiff

Salerno and Drive Planning). He applied for and negotiated the REAL Loan Agreements between Aries and Drive Planning. *Id.*, Ex. H at 2–5, 7, 9–11 (REAL Loan Agreements with Aries). Neither IWS nor Maniaci handled payment or delivered the agreements to the Plaintiffs; Plaintiffs' financial dealings were directly with Drive Planning. *See*, *e.g.*, *id.*, Ex. F (Oct. 23, 2023 email from Plaintiff Salerno and Drive Planning stating "I wired $400,000 yesterday.  Can you confirm if it was received?"). Plaintiffs also dealt directly with Drive Planning in "rolling over" their REAL Loan Agreement principal. *Id.*, ¶ 35 ("*Drive Planning* . . . [sent] an email to investors . . . asking whether investors wanted to make a withdrawal, roll over the supposed balance into a new 90-day investment." (emphasis added)).

Providing introductory marketing one-pagers and website links is insufficient to establish a "direct and active participation in the solicitation of the immediate sale" under *Pinter*. *See*, *e.g.*, *Youngers v. Virtus Inv. Partners, Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016) (allegations that defendants "distributed the marketing materials 'through their website and other channels' . . . are insufficient"). Finding defendants to be "statutory sellers" based on such thin allegations would resurrect the "substantial involvement" test that the Supreme Court rejected in *Pinter*. Because defendants were not "sellers," Plaintiffs lack standing to sue them as such.[10]

---

[10] As discussed, *infra*, at Section V.a.iii., Plaintiffs' failure plausibly to allege that defendants are "sellers" of securities also requires dismissal of Plaintiffs NJUSL claim (Count III).

### b. Plaintiffs Carlson and Salerno Were Not "Purchasers" of the Alleged Securities

Section 12 liability is "limited to the person purchasing such security from" a defendant. *Licht v. Watson*, 567 F. App'x 689, 691 (11th Cir. 2014). Thus, "a person only has standing to sue under Section 12 if he purchased securities from the defendant." *Id.* Where a person did not purchase the security at issue, dismissal is appropriate. *See*, *e.g.*, *Becker v. Mgmt. Servs. Network, LLC*, No. 1:07-CV-0028, 2007 WL 9703368, at *2 (N.D. Ga. June 20, 2007) (dismissing claims by individual plaintiffs who did not purchase securities at issue). Neither Carlson nor Salerno signed REAL Loan Agreements in their individual capacities. The only REAL Loan Agreements are between Drive Planning and (1) Aries, (2) ECRE1, (3) Huckleberry, and (4) IRAR Trust FBO Dean Ralph Salerno. Am. Compl., ¶ 56; Ex. H. Those are the only parties who could qualify as Section 12 "purchasers." The individual Plaintiffs lack standing, and their Section 12 claims must be dismissed.

### V. PLAINTIFFS' STATE LAW CLAIMS FAIL TO PLAUSIBLY STATE VALID CAUSES OF ACTION[11]

### a. Plaintiffs' NJUSL Claim (Count III) Fails to Plausibly Allege a Valid Cause of Action

As relevant to this motion, the NJUSL creates private rights of action to sue a

---

[11] If the Court dismisses Plaintiffs' Section 12 claims, as Defendants respectfully submit that it should, then it would lack subject matter jurisdiction over Plaintiffs' remaining state law claims, and those claims, too, should be dismissed. *See* This Court's Standing Order, D.E. 15 at § III.c.iii. ("[I]f the Court determines at any time that it lacks subject-matter jurisdiction, the Court will dismiss the action. Fed. R.

seller of securities who sells by means of any untrue statement or omission of material fact[12] and the seller of unregistered securities.[13] *Wiley v. Hughes Cap. Corp.*, 746 F. Supp. 1264, 1301 (D.N.J. 1990). It is unclear whether Plaintiffs invoke the NJUSL's fraud provisions; if they do, Plaintiffs fail to plead *mens rea* with sufficient particularity. In all events, Plaintiffs NJUSL claim must be dismissed because they failed to plead "privity" or that Defendants were "sellers" under *Pinter*.

### i. *Plaintiffs Fail to Assert a NJUSL Fraud Claim*

To assert a NJUSL's fraud claim, *inter alia*, a plaintiff must allege "scienter" *See DeRobbio v. Harvest Communities of Sioux City, Inc.*, No. 01-cv-1120, 2002 WL 31947203, at *6 (D.N.J. Oct. 30, 2002)—*i.e.*, that defendant "knew of the untruth or omission and intended to deceive the buyer." N.J. Stat. Ann. 49:3-71(b)(1)–(2); *Greenberg v. Pro Shares Tr.*, A-0759-10T3, 2011 WL 2636990, at *8

---

Civ. P. 12(h)(3)"); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004).

[12] "Any person who . . . [o]ffers or sells a security by means of any untrue statement . . . is liable to the person buying the security from him . . . provided, however, that the person buying the security must sustain the burden of proof that the seller knew of the untruth or omission and intended to deceive the buyer . . . ." N.J. Stat. Ann. 49:3-71(a)(2).

[13] "Any person who . . . [o]ffers or sells a security in violation of section 8(b) [N.J. Stat. Ann. 49:3-55 (unlawful representations concerning registration)] 9(a) [N.J. Stat. Ann. 49:3-56 (broker-dealer, agent or investment advisor; registration requirement)] or 13 of this act [N.J. Stat. Ann. 49:3-60 (offer or sale; registration requirement; exemption)] . . . is liable to the person buying the security from him." *Wiley*, 746 F. Supp. at 1301 (quoting N.J. Stat. Ann. 49:3-71(a)(1)) (alterations in original).

(N.J. Super. Ct. App. Div. July 7, 2011). Alleging "scienter" requires plaintiff, at a minimum, "to allege facts giving rise to a strong inference of either reckless or conscious behavior." *Institutional Invs. Grp. v. Avaya Inc.*, 564 F.3d 242, 267–68 (3d Cir. 2009) (cleaned up). In this context, recklessness is an "extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* at 267 n.42 (citations omitted). Such allegations are subject to Rule 9(b) and may not be pled generally. *Caspersen v. Oring*, 441 F. Supp. 3d 23, 39 (D.N.J. 2020).

With respect to scienter, Plaintiffs allege that "*[d]efendants were aware*, or should have been aware, *that their investors' money was unsecured, and that the investment vehicle was nothing more than a massive scheme to defraud.*" Am. Compl., ¶ 6. This is insufficient. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997) ("It is not enough for plaintiffs to allege generally that defendants 'knew or recklessly disregarded each of the false and misleading statements for which [they were] sued,' . . . plaintiffs must allege facts that could give rise to a 'strong' inference of scienter."); *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) ("[G]eneral averments of the defendants' knowledge of material falsity will not suffice."); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) ("Plaintiffs do not,

24

however, enjoy a 'license to base claims of fraud on speculation and conclusory allegations.'" (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) ("[P]leading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud."). Because Plaintiffs fail to plead *mens rea* with particularity, their NJUSL claim must be dismissed insofar as it alleges fraud.

### ii. *Plaintiffs Fail to Plead "Privity," as Required for NJUSL Claims*

Whether Plaintiffs' NJUSL claims sound in fraud, N.J. Stat. Ann. 49:3-71(a)(2)–(5), or failure to register a security or as an agent, N.J. Stat. Ann. 49:3-71(a)(1), they must sufficiently plead "privity" with Defendants. *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1197 (N.J. 2000) ("The USL requires privity in securities-fraud actions and thus will not allow her to reach the issuer of her shares or its officers."); *Greenberg*, 2011 WL 2636990, at *9 ("The *Kaufman* Court expressly found that the Legislature 'eliminated reliance as an element of securities fraud entirely in favor of a system in which privity establishes causation.'" (quoting *Kaufman*, 754 A.2d at 1197)); *see also Lord Abbett Mun. Income Fund, Inc. v. Asami*, No. 12-cv-03694, 2014 WL 3417941, at *15 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016) (recognizing *Kaufman's* holding "that the New Jersey Uniform Securities Law does require privity.").

In *Lord Abbett*, for example, the Ninth Circuit affirmed the district court's summary judgment order on NJUSL claims brought by purchasers of securities against S&Y, a broker-dealer handling the sale of certain bonds. 653 F. App'x at 554. Despite defendant S&Y's receipt and possession of the alleged securities, and the fact that it set the sale price, transferred them to plaintiff, and deducted its fee directly from the investors' purchase money before wiring out the balance, the district court held that Lord Abbett failed to establish an issue of fact as to whether S&Y "purchased or owned the bonds." 2014 WL 3417941, at *13. Because the NJUSL "requires privity in order to establish liability," the district court granted the defendant's summary judgment motion. *Id.* at *15 (citing *Kaufman*, 754 A.2d at 1197). The Ninth Circuit affirmed, reasoning that, "as a placement agent," defendant S&Y "was required to use its best efforts to find purchasers for the bonds," but was not required "to pay [the issuer] for the bonds if purchasers were not found." 653 F. App'x at 554.

Like the Plaintiff in *Lord Abbett*, Plaintiffs here did not "purchase" the REAL Loan Agreements from Defendants. Neither IWS nor Maniaci signed the REAL Loan Agreements. *Compare Roll v. Singh*, No. 07-cv-4136, 2008 WL 3413863, at *17 (D.N.J. June 26, 2008), *as amended*, (Apr. 12, 2010) (finding "privity" element of NJUSL satisfied "because the Redemption Agreement is a contract between [plaintiff] and [corporate defendant]"). Defendants were not in the chain of title of

the alleged securities, nor did they receive the purchase money for the securities, unlike the placement agent in *Lord Abbett*, which received payments, deducted its fee, and disbursed the balance of those payments, and *still* was deemed not to be in "privity" with Plaintiffs under the NJUSL. Plaintiffs' allegations that Drive Planning incentivized IWS with referral fees places IWS and Maniaci much *farther out of privity* with the Plaintiffs than S&Y in *Lord Abbett*, who received payment directly from purchasers. At most Plaintiffs allege that Defendants provided them one-pagers and website links, and referred to Drive Planning to investigate and negotiate their own transactions. They fail to plead "privity" between Defendants and Plaintiffs with respect to the alleged securities, and the NJUSL claim must be dismissed.

### iii. *Defendants' Failure to Plausibly Allege that Defendants are "Sellers" Also Requires Dismissal of Their NJUSL claim.*

Under the analysis set forth *supra* in Section IV.a., Plaintiffs' failure to plausibly allege that defendants were "sellers" of securities also renders their NJUSL claim deficient. *See*, *e.g.*, *Zendell v. Newport Oil Corp.*, 544 A.2d 878, 88283 (N.J. Super. Ct. App. Div. 1988) (citing the *Pinter* standard in assessing whether defendant was a "seller" under NJUSL); s*ee also In re Nat'l Reality Inv. Advisors, LLC*, No. 22-br-14539, 2024 WL 4481067, at *15 (Bankr. D.N.J. Oct. 11, 2024). Nor can Maniaci be deemed to "control[] a seller" under the NJUSL. *Abrams v. Ohio Cas. Ins. Co.*, 731 A.2d 48, 52 (N.J. Super. Ct. App. Div. 1999) (holding since plaintiffs failed to establish that defendant "was either a seller or had control of a

seller of the securities in question, their claim for securities fraud must fail").

### b. Plaintiffs Fail to Plausibly Allege "Professional Negligence/Negligent Misrepresentation" (Count IV)

To assert a negligent misrepresentation claim, a plaintiff must plausibly allege an incorrect statement, negligently made and justifiably relied upon, causing injury. *Pabon v. Hackensack Auto Sales, Inc.*, 164 A.2d 773, 784 (N.J. Super. Ct. App. Div. 1960). New Jersey law recognizes the tort of negligent misrepresentation principally with respect to statements made in audit reports. As the Supreme Court of New Jersey described in *H. Rosenblum, Inc. v. Adler*,

> [a]n independent auditor is engaged to review and examine a company's financial statements and then to issue an opinion with respect to the fairness of that presentation. That report is customarily attached to the financial statements and then distributed by the company for various purposes. Recipients may be stockholders, potential investors, creditors and potential creditors.

461 A.2d 138, 142 (N.J. 1983). In such circumstances, a plaintiff may sue for negligent misrepresentation to recover "economic loss against the provider of a service." *Zendell*, 544 A.2d at 881 (citing *H. Rosenblum*, 461 A.2d at 153).

Plaintiffs allege that IWS was "in the business of setting up Charitable LLC's ('CLLC's') for people wishing to maximize tax benefits." Am. Compl., ¶ 4. They did not look to IWS for corporate due diligence, audit reports, or financial analyses of Drive Planning or the REAL Loan Agreements. At most, Plaintiffs have alleged that Defendants provided introductory materials on Drive Planning. Plaintiffs acted

accordingly when they interfaced directly with Drive Planning staff, *id.*, Ex. F, and executives, *id.*, Ex. G, received literature and information generated by Drive Planning on Drive Planning letterhead and its website, *id.*, Exs. A, C–D; filled out applications through Drive Planning's website, *id.*, Exs. F–G; entered into the REAL Loan Agreements directly with Drive Planning, *id.*, ¶ 56; Ex. H; applied for and maintained "account[s]" directly with Drive Planning and without defendants' involvement or discretion over those accounts; *id.*, Ex. F at 47; transferred loan money directly to Drive Planning (and not IWS or Maniaci), *id.*, Ex. F at 3; and corresponded directly with Drive Planning on the decision to "roll over" their loan amounts, *id.*, ¶ 35. Plaintiffs' negligent misrepresentation claim fails to allege either a duty or breach by Defendants and should be dismissed.

### c. Plaintiffs Fail to Plausibly Allege Breach of Fiduciary Duty (Count V)

To establish a claim for breach of fiduciary duty under New Jersey law, "a plaintiff must show that the defendant had a duty to the plaintiff, that the duty was breached, that injury to plaintiff occurred as a result of the breach, and that the defendant caused that injury." *St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*, No. 04-cv-4540, 2005 WL 1199045, at *9 (D.N.J. May 18, 2005) (citing *In re ORFA Sec. Litig.*, 654 F. Supp. 1449, 1457 (D.N.J. 1987)).

The "essence" of a fiduciary duty claim is that "one party places trust and confidence in another who is in a dominant or superior position." *F.G. v.*

*MacDonnell*, 696 A.2d 697, 703–04 (N.J. 1997) (citations omitted). In a securities

transaction, the existence of a fiduciary duty generally turns on who had control of—

or "discretion" over—the investment account. In that context, a breach of fiduciary

duty claim will not lie when the investment account is controlled by the plaintiff

investor, and not the defendant financial advisor. *See Est. of Parr v. Buontempo Ins.*

*Servs.*, No. L-2500-06, 2006 WL 8551632, at *4 (N.J. Super. Sep. 08, 2006) (citing

*McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 767 (3rd Cir. 1990)). Even

where a defendant advises a plaintiff improperly, absent a defendant's control over

the account, a plaintiff will be deemed to have made the decision to purchase the

security and there can be no breach of fiduciary duty. *Est. of Parr*, 2006 WL

2620504, at *4 ("Assuming that Defendant did improperly advise Ms. Parr, . . . she

ultimately decided to make the investment [and,] [i]n the absence of [plaintiff's]

control of the account, Defendant does not have a fiduciary duty to breach."); *see*

*also Goodman v. Goldman, Sachs & Co.*, No. 10-cv-1247, 2010 WL 5186180, at

*13 (D.N.J. Dec. 14, 2010) ("In light of Plaintiff's failure to allege that Goldman

Sachs maintained discretion over his investments, his breach of fiduciary duty claim

fails to state a claim under New Jersey law.").

    Plaintiffs fail to plausibly allege that Defendants owed them a fiduciary duty

with respect to REAL Loan Agreements, much less a duty that required them to root

out Drive Planning's concealed fraud. While Plaintiffs allege in conclusory fashion

that Defendants "induced" them to enter REAL Loan Agreements, the Amended Complaint is clear that Plaintiffs interfaced directly with Drive Planning and its staff to evaluate and negotiate the REAL Loan Agreements. *See supra* Section V.b. (listing Plaintiffs' direct actions with Drive Planning). Where Plaintiffs undertook such direct involvement with Drive Planning to investigate the REAL Loan Agreements to arrive at their own investment decision, and transacted directly with Drive Planning, they cannot claim Defendants owed them a fiduciary duty.

Nor do Plaintiffs plausibly allege that Defendants were in any better position to uncover Drive Planning's alleged fraud than Plaintiffs, who interfaced directly with Drive Planning executives before entering the REAL Loan Agreements. *See F.G.*, 696 A.2d at 703–04 (holding the "essence" of a fiduciary duty is when "one party places trust and confidence in another who is in a dominant or superior position"). Because Plaintiffs have not plausibly pled that Defendants had a fiduciary duty, had discretion over Plaintiffs investment accounts, or were in any better position than Plaintiffs to avoid the alleged fraud losses, the breach of fiduciary duty claim must be dismissed.

### d. Plaintiffs Fail to Plausibly Allege Unjust Enrichment (Count VI)

Under New Jersey law, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration

enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). To establish an unjust enrichment claim, Plaintiffs must plausibly allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) (quoting *Wanaque Borough Sewerage Auth. v. Twp. of West Milford*, 677 A.2d 747, 753 (N.J. 1996)). "Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a requirement that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim." *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (citation and internal quotation marks omitted).

Plaintiffs' unjust enrichment claim stumbles out of the blocks in at least three ways. *First*, New Jersey law bars an unjust enrichment claim in the face of an express contract that governs the same subject matter, such as the REAL Loan Agreements attached as Exhibit H to the Amended Complaint. *See Shalita v. Twp. of Washington*, 270 N.J. Super. 84, 90 (App. Div. 1994) ("Quasi-contract liability should not be imposed . . . if an express contract exists concerning the identical subject matter" (cleaned up)); *Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280-81 (1951). *Second*, Plaintiffs allege that Defendants received a benefit in the form of "sales commissions and awards" they received from Drive Planning, Am. Compl., ¶¶ 45, 127 (alleging

Drive Planning paid the defendants "sales commissions"); however, they claim that *Drive Planning* conferred this alleged benefit upon Defendants and *not Plaintiffs*, as required under New Jersey law. *See VRG Corp.*, 641 A.2d at 526 (requiring a plaintiff to establish that (1) "*it* expected remuneration from the defendant", and (2) "at the time *it* performed or conferred a benefit" (emphasis added)). *Third*, Plaintiffs have not alleged an "expectation of remuneration" in connection with the alleged benefit conferred on defendants (*i.e.*, the "sales commissions and awards" paid by Drive Planning). Indeed, Plaintiffs claim they were unaware of the "sales commissions and awards." *See*, *e.g.*, Am. Compl., ¶ 53 (alleging defendants "did not disclose to Plaintiffs that they were being paid on commission by Drive Planning"); *id.*, ¶ 55 (same). If Plaintiffs did not *know* about the alleged benefit, as they allege, then they cannot—and do not—allege facts sufficient to establish an "expectation of remuneration" in exchange for them, as New Jersey law requires. *See VRG Corp.*, 641 A.2d at 526. *Fourth*, Plaintiffs do not plausibly allege the kind of "relationship" with Defendants under which Defendants' failure to remit remuneration makes any sense. As discussed, *supra*, IWS provided the service of setting up CLLCs that offered certain tax advantages for investors. Am. Compl., ¶ 4. Beyond IWS providing Plaintiffs introductory information and links to Drive Planning's website, Plaintiffs interacted directly with Drive Planning to evaluate and negotiate the REAL Loan Agreements. IWS's and Maniaci's limited interactions with Plaintiffs'

negotiation of the REAL Loan Agreements, as alleged, is a far cry from the kind of "special relationship" necessary to confer liability against defendants for unjust enrichment.

### e. Plaintiffs' Common Law Tort Claims Against Maniaci in his Individual Capacity Must be Dismissed

Nor can Maniaci be held personally liable for negligent misrepresentation, unjust enrichment, and/or breach of fiduciary duty.[14] Under New Jersey's "participation theory," a corporate officer is not liable for the torts of the corporation unless the corporation owed a duty to the plaintiffs, the corporation delegated that duty to the officer, and the officer breached the duty by his own conduct. *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 272 (N.J. 2002). Such personal liability normally is reserved for cases of intentional torts or physical personal injury. *Id.* at 304. That is not the case here.

The "participation theory" does not apply to Maniaci. IWS's duty to the Plaintiffs by virtue of the services in setting up CLLCs, *see* Am. Compl., ¶ 4, did not extend to auditing or researching Drive Planning's corporate books and records. There could be no such duty delegated by IWS to Maniaci to carry out that task. Nor are there any allegations that Maniaci, by his own conduct, breached such delegated

---

[14] Defendants' argument regarding the "participation theory" applies equally to bar recovery under Plaintiffs' breach of fiduciary duty claim and unjust enrichment claims, discussed *infra*.

duty, or was so involved in tortious conduct that personal liability would be appropriate. Nor are the torts alleged of the nature that New Jersey courts typically find personal liability for officers, such as intentional torts and physical personal injuries. *See*, *e.g.*, *Charles Bloom & Co. v. Echo Jewelers,* 652 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1995) (intentional conversion); *Van Dam Egg Co. v. Allendale Farms,* 489 A.2d 1209, 1211 (N.J. Super. Ct. App. Div. 1985) (fraud); *Robsac Indus., Inc. v. Chartpak,* 497 A.2d 1267, 1271 (N.J Super. Ct. App. Div. 1985) (malicious interference with contract, fraudulent misrepresentation, and defamation); *McGlynn v. Schultz*, 231 A.2d 386, 389 (N.J. Super. Ct. App. Div. 1967) (knowing conversion). Finally, because the duties at issue, if any, arise from a contractual relationship between IWS and its respective clients involving the formation of CLLCs, the "substantial participation" theory of liability cannot be used to confer personal liability upon Maniaci. *Saltiel*, 788 A.2d at 275–76 (holding that "if the breach of the corporation's duty to the plaintiff is determined to be governed by contract rather than tort principles, the participation theory of tort liability is inapplicable"). Plaintiffs do not plausibly allege any duty on the part of Maniaci that extended beyond the scope of his agency and role with IWS. Nor do they allege any misrepresentations, negligent or otherwise, that are specifically attributed to Maniaci, and certainly not in his individual capacity. Plaintiffs' common law tort claims against Maniaci must be dismissed for this additional reason.

Respectfully submitted, this 4th day of August 2025.

/s/ Justin K. Victor
Justin K. Victor
Georgia Bar No. 105516
VictorJ@gtlaw.com
**GREENBERG TRAURIG, LLP**
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, Georgia 30305
T: (678) 553-2100

Eric W. Moran
*Pro Hac Vice forthcoming*
Eric.Moran@gtlaw.com
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ  07932
T: (973) 360-7900

Justin M. Schettino
*Pro Hac Vice forthcoming*
Justin.Schettino@gtlaw.com
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ  07932
T: (973) 360-7900

*Attorneys for Defendants*
*Integrated Wealth Strategies, LLC*
*and Joseph C. Maniaci, Jr.*

36

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

I hereby certify that I prepared the foregoing **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS THIS ACTION PURSUANT TO THE COURT'S AUGUST 13, 2024 ORDER AND FED. R. CIV. P. 12(b)(1), 12(b)(6), AND 12(b)(7)** in Times New Roman, 14-point font in accordance with L.R. 5.1(C) and in accordance with the Court's Standing Order, as modified by request in the pending motion for leave to file excess pages. *See* D.E. 21. Further, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Brian Pastor
bpastor@sonnlaw.com

Jeffrey R. Sonn
jsonn@sonnlaw.com

Ross M. Good
ross@thegoodlawgroup.com

Shawn M. Good
info@thegoodlawgroup.com

DATED: August 4, 2025

*/s/ Justin K. Victor*
Justin K. Victor
Georgia Bar No. 105516