## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ARIES LEGACY, LLC, Delaware corporation, CHRISTIAN CARLSON, DEAN RALPH SALERNO, ECRE1 LLC, an Arizona corporation, HUCKLEBERRY GLAM, INC., an Arizona corporation, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) | Case No: 1:25-cv-02118-VMC |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| INTEGRATED WEALTH STRATEGIES, LLC., a New Jersey Corporation, and JOSEPH C. MANIACI, JR., individually, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS THIS ACTION PURSUANT TO THE COURT'S AUGUST 13, 2024 ORDER AND FED. R. CIV. P. 12(b)(1), 12(b)(6), AND 12(b)(7)

# <u>TABLE OF CONTENTS</u>

**PAGE**

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ......................................................................................1

I.    THIS ACTION SHOULD BE DISMISSED OR STAYED
PURSUANT TO THE RECEIVERSHIP ORDER.............................1

II.   RULE 19 REQUIRES DISMISSAL FOR FAILURE TO JOIN
INDISPENSABLE PARTIES.........................................................6

III.  PLAINTIFFS' SECTION 12 CLAIMS MUST BE
DISMISSED ...........................................................................10

     a.    Plaintiffs' Section 12(a)(2) Claim (Count I) is Not
Adequately Pled ................................................................10

     b.    Plaintiffs' Section 12(a)(1) Claim (Count II) Should be
Dismissed As Untimely ......................................................12

IV.  PLAINTIFFS LACK ARTICLE III STANDING .............................14

     a.    Defendants Are Not "Statutory Sellers" of the Alleged
Securities..........................................................................15

     b.    Carlson and Salerno Were Not "Purchasers" of the
Alleged Securities ..............................................................18

V.   PLAINTIFFS STATE LAW CLAIMS ALSO FAIL .........................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re AirGate PCS, Inc. Sec. Litig.*,
  No. 1:02-cv-1291, 2006 WL 8431172 (N.D. Ga. Feb. 28, 2006) ......................16

*In re Bestline Prods. Sec. & Antitrust Litig.*,
  MDL No. 162-Civ, 1975 WL 386 (S.D. Fla. Mar. 21, 1975) ....................13, 14

*In re BitConnect Sec. Litig.*,
  No. 18-cv-80086, 2019 WL 9171208 (S.D. Fla. Nov. 15, 2019)......................12

*In re CNL Hotels & Resorts, Inc.*,
  No. 04-cv-1231, 2005 WL 2291729 (M.D. Fla. Sep. 20, 2005) .................16, 17

*Dendinger v. First Nat'l Corp.*,
  Civ. A. No. 87-4611, 1989 WL 85070 (E.D. La. July 27, 1989) ......................14

*Dwyer v. Cap. Invs. Mgmt. LLC*,
  No. 23-cv-00003, 2023 WL 9039526 (D.N.J. Dec. 29, 2023) ........................4, 6

*Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*,
  859 F.3d 1306 (11th Cir. 2017) ...............................................................7

*Gibbons v. McBride*,
  124 F. Supp. 3d 1342 (S.D. Ga. 2021) ...............................................................2

*Gilmour v. Gates, McDonald and Co.*,
  382 F.3d 1312 (11th Cir. 2004) ...............................................................2

*Gotham Holdings, LP v. Health Grades, Inc.*,
  534 F. Supp. 2d 442 (S.D.N.Y. 2008) ......................................................11, 12

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995)................................................................................10, 11

*Hill v. Duscio*,
  No. 16-cv-04767, 2017 WL 10795024 (N.D. Ga. Mar. 31, 2017)......................4

*Hornbeck v. Boyne USA, Inc.*,
  Case No. 1:24-cv-682, 2025 WL 2355212 (W.D. Mich. Aug. 14,
  2025) ................................................................................................14

*Kane v. Rose*,
  259 F. App'x 258 (11th Cir. 2007) ...........................................................3, 7, 10

*Laker Airways, Inc. v. Brit. Airways, PLC*,
   182 F.3d 843 (11th Cir. 1999) ............................................................................9

*Lewis v. Scotbilt Homes, Inc.*,
   No. CV510-016, 2010 WL 11066490 (S.D. Ga. Oct. 27, 2010)........................9

*Licht v. Watson*,
   567 F. App'x 689 (11th Cir. 2014) ..................................................................18

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
   653 F. App'x 553 (9th Cir. 2016) ....................................................................19

*Morley v. Cohen*,
   610 F. Supp. 798 (D. Md. 1985)......................................................................14

*Murena v. CQ Consulting Services, LLC, et al.*,
   No. 1:25-cv-04587-VMC (N.D. Ga.) .................................................................2

*In re Nat'l Reality Inv. Advisors, LLC*,
   No. 22-br-14539, 2024 WL 4481067 (Bankr. D.N.J. Oct. 11, 2024) ...............15

*P. Stolz Fam. P'Ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004) ........................................................................13, 14

*Pinter v. Dahl*,
   486 U.S. 622 (1988)....................................................................................15, 16

*Raney v. Allstate Ins. Co.*,
   370 F.3d 1086 (11th Cir. 2004) .......................................................................19

*Rensel v. Centra Tech, Inc.*,
   No. 17-cv-24500, 2019 WL 2085839 (S.D. Fla. May 13, 2019) ......................17

*Rishmague v. Winter*,
   No. 11-cv-2024, 2014 WL 11633690 (N.D. Tex. Sept. 9, 2014),
   *aff'd*, 616 F. App'x 138 (5th Cir. 2015) ............................................................2

*Ryder Int'l Corp. v. First Am. Nat'l Bank*,
   943 F.2d 1521 (11th Cir. 1991) .......................................................................17

*Saltiel v. GSI Consultants, Inc.*,
   170 N.J. 297, 788 A.2d 268 (2002) .................................................................20

*SEC v. BKCoin Mgmt., LLC*,
   No. 23-CV-20719, 2024 WL 2874857 (S.D. Fla. May 17, 2024),
   *report and recommendation adopted*, No. 23-20719-CIV, 2024
   WL 3013632 (S.D. Fla. June 14, 2024)..........................................................4, 5

*SEC v. Byers*,
  592 F. Supp. 2d 532 (S.D.N.Y. 2008), *aff'd*, 609 F.3d 87 (2d Cir.
  2010) ..............................................................................................6

*SEC v. Complete Bus. Sols. Grp., Inc.*,
  No. 20-cv-81205, 2022 WL 20703936 (S.D. Fla. Mar. 3, 2022) ........................3

*SEC v. Drive Planning, LLC, et al.*,
  No. 1:24-cv-03583-VMC (N.D. Ga.) ....................................................8

*SEC v. Wencke*,
  742 F.2d 1230 (9th Cir. 1984) ..........................................................3, 6

*Stephenson v. Deutsche Bank AG*,
  282 F. Supp. 2d 1032 (D. Minn. 2003) ..............................................13

*Steusloff v. Finelli*,
  No. 23-cv-207, 2024 WL 470251 (N.D. Ga. Jan. 2, 2024) ................................7

*Thompson v. RelationServe Media, Inc.*,
  610 F.3d 628 (11th Cir. 2010) ..........................................................11

*United States v. Acorn Tech. Fund, L.P.*,
  429 F.3d 438 (3d Cir. 2005) ..............................................................6

*Wildes v. BitConnect Int'l PLC*,
  25 F.4th 1341 (11th Cir. 2022) ........................................................12

*Yates v. Mun. Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) ..........................................................11

*Youngers v. Virtus Inv. Partners, Inc.*,
  195 F. Supp. 3d 499 (S.D.N.Y. 2016) ................................................17

*Yung v. Lee*,
  432 F.3d 142 (2d Cir. 2005) ............................................................11

*Zakinov v. Ripple Labs, Inc.*,
  Case No. 18-cv-06753, 2020 WL 922815 (N.D. Cal. Feb. 26,
  2020) ..............................................................................................14

*Zendell v. Newport Oil Corp.*,
  544 A.2d 878 (N.J. Super. Ct. App. Div. 1988) ..................................15

## Statutes

15 U.S.C. § 77m ..........................................................................12, 13, 14

15 U.S.C. § 77l(a)(2) ....................................................................12, 18

**Other Authorities**

Fed. R. Civ. P. 19(a)..................................................................................................7

## PRELIMINARY STATEMENT[1]

Plaintiffs' opposition brief is riddled with arbitrary distinctions of the case law relied upon by Defendants in their moving brief that distracts from the meritorious bases for Defendants' Motion. For the reasons that follow, Plaintiffs' Amended Complaint must be dismissed in its entirety.

## ARGUMENT

### I. THIS ACTION SHOULD BE DISMISSED OR STAYED PURSUANT TO THE RECEIVERSHIP ORDER

In their opposition, Plaintiffs agree that Courts "generally stay or dismiss without prejudice" actions filed in violation of a receivership order. Pls.' Opp'n Br. at 4. Then, they attempt to avoid the consequence of the Receivership Order by retracting their own allegations that Defendants were "agents"[2] of Drive Planning. *Id.* at 4–6. They even go so far as to assert that it was the *Defendants*, and not the Plaintiffs, who "insist they are 'agents' of the Receivership Defendants." *Id.* at 5. Gaslighting aside, Plaintiffs are left with the allegations in their Amended Pleading, which plainly assert that the Defendants were "agents" of Drive Planning, barring

---

[1] All defined terms from Defendants' moving brief are incorporated herein.

[2] *See* Am. Compl., ¶ 4 ("IWS, and others employed at IWS **became agents of Drive Planning**"); *id.* ¶ 5 ("IWS and Maniaci, **as agents of Drive Planning**, sent their clients various materials" related to Drive Planning's alleged securities); *id.* ¶ 27 (alleging Drive Planning paid "**sales agents, including IWS and Maniaci**" commissions); *id.* ¶ 30 ("Drive Planning, with the assistance of **sales agents such as IWS and Maniaci**, raised more than $336 million") (emphasis added).

1

their claims under the Receivership Order. Plaintiffs cannot ignore those allegations, nor amend them via their opposition brief. *See Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1381 (S.D. Ga. 2021) ("A complaint may not be amended by briefs in opposition to a motion to dismiss" (collecting cases)); *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

The Receiver's August 13, 2025 "Ancillary Complaint" removes doubt that this matter is an Ancillary Proceeding filed and maintained in violation of the Receivership Order. *See Murena v. CQ Consulting Services, LLC, et al.*, No. 1:25-cv-04587-VMC (N.D. Ga.) (the "Receiver Action"). In it, the Receiver alleges Defendant IWS and others acted as Drive Planning's "Agents." *See* Receiver Action, D.E. 1 at 2 (defining IWS and other defendants as "Agents"). The Receiver seeks the same relief (disgorgement of commissions) under the same theory (unjust enrichment) as Plaintiffs do here, underscoring the interference with the Receiver's business that this case portends.

Plaintiffs are silent on Defendants' arguments that this is an Ancillary Pleading because it "involves" both (a) Drive Planning and (b) its property, and thus concede *sub silentio* those additional bases for dismissal.[3]

---

[3] *See*, *e.g.*, *Rishmague v. Winter*, No. 11-cv-2024, 2014 WL 11633690, at *3 (N.D. Tex. Sept. 9, 2014) (staying matter, *inter alia*, because "to the extent Defendants in this case are ever held liable, any proceeds of the claim are potential receivership assets, falling squarely within the bounds of the Receivership Order"), *aff'd*, 616 F. App'x 138 (5th Cir. 2015).

Plaintiffs fail to distinguish *Kane v. Rose*, 259 F. App'x 258 (11th Cir. 2007), which is on all fours with this case and supports dismissal both under the Receivership Order and for failure to join indispensable parties. Plaintiffs argue the Court in *Kane* held that the district court "abused its discretion in dismissing *with prejudice* an action that was subject to a stay," but fail to recognize that the Eleventh Circuit affirmed dismissal *without prejudice*. Pls.' Opp'n Br. at 4. As in *Kane*, dismissal is proper.

Recognizing their lack of *permission* to bring this action, Plaintiffs seek the Court's *forgiveness* for doing so and ask to be relieved *post hoc* of any obligations under the Receivership Order's injunction and stay provisions. But the factors set forth in *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) warrant no such relief.[4]

*Wencke* Factor 1 (the Receivership's *status quo*). The relief that Plaintiffs seek pits their interests in direct competition with the Receiver. Plaintiffs seek disgorgement of moneys Drive Planning paid to IWS, and the Receiver likewise is laying claim to the same payments. Allowing the case to proceed would promote a

---

[4] In considering such requests, courts generally consider three factors: (1) preservation of receivership status quo; (2) the stage of the receivership; and (3) the merit of movant's claim. *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984); *see, e.g.*, *SEC v. Complete Bus. Sols. Grp., Inc.*, No. 20-cv-81205, 2022 WL 20703936, at *1 (S.D. Fla. Mar. 3, 2022) (analyzing *Wencke* factors and denying relief from injunction and stay provisions found in SEC receivership order because litigation "would infringe upon the work of the Receiver and could create an imbalance among the investors with respect to the recovery of their assets").

perverse competition between Plaintiffs' counsel and the Receiver, which is anathema to the goal of the Receivership Order. *See Hill v. Duscio*, No. 16-cv-04767, 2017 WL 10795024, at *2 (N.D. Ga. Mar. 31, 2017) (recognizing that the goal of an SEC receivership litigation injunction is "to give the receiver a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant" (internal quotation marks and citation omitted)). Plaintiffs' allegations make the Receivership Defendant central—indeed, *indispensable*—to their claims. Plaintiffs' claims cannot be fully adjudicated without testimony and information obtained from the Receivership Defendant, and third-party claims asserted against the Receivership Defendant and its officers. *See*, *e.g.*, *Dwyer v. Cap. Invs. Mgmt. LLC*, No. 23-cv-00003, 2023 WL 9039526, at *7 (D.N.J. Dec. 29, 2023) (staying action pursuant to SEC receivership injunction, *inter alia*, because crossclaims implicated receivership defendants).

Plaintiffs' citation to the out-of-district report and recommendation in *SEC v. BKCoin Mgmt., LLC*[5] does not save their case. *First*, the plaintiff in *BKCoin* was the first to bring the alleged malfeasance to light, and not a "copycat" of the SEC's action like this case. 2024 WL 2874857, at *2. The plaintiff in that case filed suit in the Southern District of New York *several months before* the SEC caught wind of

---

[5] No. 23-CV-20719, 2024 WL 2874857, at *7 (S.D. Fla. May 17, 2024), *report and recommendation adopted*, No. 23-20719-CIV, 2024 WL 3013632 (S.D. Fla. June 14, 2024).

the alleged fraud, filed its own lawsuit, and had a receiver installed. *Id.* That is, unlike this case, the claims in *BKCoin* were not filed in violation of a receivership order. *Second*, once the district court in *BKCoin* entered the SEC's receivership order and its stay and injunction provisions took hold, the plaintiff's litigation was indeed stayed. *Third*, when plaintiff moved for relief from the stay, the court *denied* that motion. *Id. Fourth*, when the magistrate judge revisited its ruling more than a year later and finally did grant relief, it did so largely because plaintiffs' claims would "not affect the Receivership or any Receivership assets, nor will it affect the SEC's litigation against Defendants." *Id.* at *7. Here, Plaintiffs' claims seek the same relief as the Receiver, resulting in a competition that undermines the wide berth that this Court meant to give the Receiver.

    *Wencke* Factor 2 (the stage of the Receivership). The receivership was instituted less than a year ago, and the Receiver currently is addressing many of the same claims and issues that Plaintiffs have placed in issue. *See* Moran Decl., Ex. B at 11–12; Ex. C at 12–13; Ancillary Compl., Receiver Action, D.E. 1. On June 23, 2025, the SEC and Burkhalter jointly moved in the SEC Action to extend the discovery period, arguing that the additional time is needed because the "parties and Receiver are still working to resolve the outstanding issues in this complex case." SEC Action, D.E. 136. And, on August 13, 2025, the Receiver filed an Ancillary Complaint in the Receiver Action seeking alleged "improper and illegal

commissions . . . that [are] at the heart of [the SEC Action]." *See* Ancillary Compl., Receiver Action, D.E. 1. Because the Receiver's work is ongoing, and Plaintiffs' claim involves the same parties, property, and legal issues present in the Receivership case, the second factor weighs heavily in favor of enforcing the injunction and stay provisions. *See*, *e.g.*, *Dwyer*, 2023 WL 9039526, at *7 (staying action, *inter alia*, because plaintiffs' claims "stem from" the receiver defendants' inducement of the investor and potentially involved receivership moneys).

*Wencke* Factor 3 (merits of Plaintiffs' claims). Where the first two factors weigh heavily against relief from the injunction and stay provisions, as they do here, courts often do not evaluate the merit of the Plaintiff's claims. *See*, *e.g.*, *SEC v. Byers*, 592 F. Supp. 2d 532, 537 (S.D.N.Y. 2008), *aff'd*, 609 F.3d 87 (2d Cir. 2010). As described *infra*, Plaintiffs have failed to establish that they have "colorable claims to assert which justify lifting the receivership stay." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 444 (3d Cir. 2005) (citing *Wencke*, 742 F.2d at 1232). The Court should dismiss or stay this matter without the need to reach the infirmities identified herein.

## II. RULE 19 REQUIRES DISMISSAL FOR FAILURE TO JOIN INDISPENSABLE PARTIES

Plaintiffs argue that Defendants "have not established indispensability" by ticking off the Rule 19 factors in conclusory fashion, but they refuse to acknowledge that their claims rise and fall on one core issue: whether Drive Planning perpetrated

a fraud. At bottom, Plaintiffs seek to hold Defendants responsible for the misrepresentation and omissions of the Drive Planning Parties, and their claims hinge on establishing that those parties perpetrated a Ponzi scheme. Further, Plaintiffs' conclusory assertion that complete relief can be granted without joining the Drive Planning Parties, Pls.' Opp'n Br. at 10, ignores Step One of Rule 19(a)'s "pragmatic concerns, especially the effect on the parties and the litigation." *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017) (citation omitted); *Steusloff v. Finelli*, No. 23-cv-207, 2024 WL 470251, at *4 (N.D. Ga. Jan. 2, 2024). As active participants in the alleged Ponzi scheme who bear primary responsibility for Plaintiffs' losses, the Drive Planning Parties are indispensable under Rule 19(a).

Plaintiffs fail to distinguish *Kane*, in which the Eleventh Circuit affirmed the district court's dismissal for failure to join indispensable parties in identical circumstances. *See* Pls.' Opp'n Br. at 10. Plaintiffs' claim that this matter "will not deplete Receivership Assets" is belied by the fact that they seek the exact same relief as the Receiver (commissions received by Defendant) based on the same theory of recovery (unjust enrichment). Just as in *Kane*, Plaintiffs' allegations that Defendants served as Drive Planning's "agents," Am. Compl. ¶¶ 4–5, 27, 30, render the Drive Planning Parties "necessary" and "indispensable," and require dismissal. *See Kane*, 259 F. App'x at 260.

Plaintiffs' assertion that they do not "seek to hold these Defendants accountable for the conduct of the Receivership Defendants," Pls.' Opp'n Br. at 11, ignores their allegations that Defendants acted as "agents" of the Drive Planning Parties, placing the interests of those parties as principals squarely in issue. It also ignores the overlap of legal and factual issues at issue in this matter, the SEC Action, and the Receiver Action—an overlap that they have conceded elsewhere to the Court.[6] Plaintiffs unavailingly frame the issues here as solely "whether the named Defendants are statutory sellers and whether the REAL Loan Agreements are securities." *Id.* at 12. Plaintiffs' case depends upon establishing that the Drive Planning Parties perpetrated a Ponzi scheme.

Plaintiffs' argument that "Defendants fail to explain what claims require the [Drive Planning Parties'] presence," Pls.' Opp'n Br. at 12, makes little sense. As Defendants have argued, each of Plaintiffs' claims depend upon establishing the Drive Planning Parties' misrepresentations. If there is no fraud by Drive Planning, then there can be no "misrepresentation" in a (here, absent) prospectus (Count I), NJ USL violation (Count III), or breach of a duty of care or fiduciary duty for failing to root out the fraud (Counts IV and IV). Subpoenas for depositions and document

---

[6] Plaintiffs' Civil Case Information Statement identifies the SEC Action as a "Related Case" because this case presents the "SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN" the SEC Action. D.E. 1-10 at 2 (citing *SEC v. Drive Planning, LLC, et al.*, No. 1:24-cv-03583-VMC (N.D. Ga.)).

demands will need to be served upon the Drive Planning Parties, actions that the Receivership Order expressly forbids. *See* Moran Decl., Ex. A ¶¶ 33–34. Were this case to proceed, Defendants will be prejudiced by their inability to properly investigate Plaintiffs' claims and develop their defenses.

Plaintiffs' argument that because the Drive Planning Parties' conduct "is already before the SEC," *this* matter can be resolved without them, *see* Pls.' Opp'n Br. at 13, is flawed. The Drive Planning Parties are far more than mere "active participants" in Plaintiffs' allegations and, thus, are "critical to the disposition of the important issues in the litigation." *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999) ("Although the relief [plaintiff] presently seeks may not directly implicate [the nonparty] because there would be no order directed at [the nonparty], [plaintiff's] [] claims necessarily require that a court evaluate [the nonparty's] conduct . . . thereby substantially implicating [the nonparty's] interests." (citation omitted)); *Lewis v. Scotbilt Homes, Inc.*, No. CV510-016, 2010 WL 11066490, at *4 (S.D. Ga. Oct. 27, 2010) (same).

In response to Defendants' argument that they are prejudiced by Plaintiffs' recoupment of the same money at issue in the Receiver Action, Plaintiffs vaguely assert "[t]o the extent both the Receiver and Plaintiffs seek recovery of commissions, those claims can be segregated to avoid double recovery." Pls.' Opp'n Br. at 13. This argument both concedes the overlap in the two litigation matters and promotes

piecemeal litigation that would unfairly prejudice Defendants. Nor have Plaintiffs rebutted what the *Kane* court found to be compelling—that Plaintiffs may assert appropriate claims through the Receivership or once the Receivership injunction lifts. *See Kane*, 259 F. App'x at 261.

### III.  PLAINTIFFS' SECTION 12 CLAIMS MUST BE DISMISSED

### a.  Plaintiffs' Section 12(a)(2) Claim (Count I) is Not Adequately Pled

Plaintiffs do not allege there was a prospectus. Indeed, they concede that the Real LOAN Agreements "were sold in a private offering," Am. Compl. ¶ 60, and "[n]either Plaintiffs nor Defendants had access to the type of information normally provided in a prospectus of a SEC registration statement," *id.* at ¶ 85.

Confronted with this fatal concession, Plaintiffs do another "about face," and again attempt to amend their pleading via their opposition brief by arguing that "[t]his was a public offering." *Compare* Pls.' Opp'n Br. at 15, *with* Am. Compl. ¶ 60 (stating "[t]he REAL agreements were sold in a private offering"). However, there is no plausible allegation that Defendants "solicited investors nationwide," as Plaintiffs argue in their brief. *See* Pls.' Opp'n Br. at 15. Indeed, Plaintiffs' allegation is that Defendants induced only IWS's private clients, and not the public at large, to invest in Drive Planning. *See*, *e.g.*, Am. Compl., ¶ 67 (limiting class to clients who "invested in DRIVE PLANNING LLC *through IWS*" (emphasis added)). Courts have consistently held that the Supreme Court's holding in *Gustafson v. Alloyd Co.*,

513 U.S. 561 (1995), limits § 12(a)(2) liability to public offerings. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 677 n.69 (11th Cir. 2010) ("[T]he Supreme Court has limited § 12 claims to public offerings."); *Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005) ("We now join these courts in holding that *Gustafson*'s definition of a prospectus as 'a document that describes a public offering of securities' compels the conclusion that a Section 12(a)(2) action cannot be maintained by a plaintiff who acquires securities through a private transaction, whether primary or secondary."); *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 899 (4th Cir. 2014) (same). Where, as here, a plaintiff has failed to plausibly allege an obligation to issue a prospectus, Section 12(a)(2) liability cannot attach. *Gustafson*, 513 U.S. at 571 ("[T]he liability imposed by § 12[a](2) cannot attach unless there is an obligation to distribute the prospectus in the first place."); *Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442, 445 (S.D.N.Y. 2008).

Plaintiffs' definitional argument regarding a "prospectus," Defs.' Br. at 11 (citing *Yates*, 744 F.3d at 899), ignores *Gustafson*'s holding that "the term 'prospectus' refers to a document soliciting the public to acquire securities" and not to private communications related to a private offering. *Gustafson*, 513 U.S. at 571, 574; *see also Yung*, 432 F.3d at 148 (quoting *Gustafson* and finding "[n]o such obligation arises with respect to private or secondary sales of securities because 'the word "prospectus" is a term of art referring to a document that describes a *public*

11

*offering* of securities by an issuer or controlling shareholder'"); *Gotham Holdings*, 534 F. Supp. 2d at 444 (holding, where Plaintiffs did not allege an obligation to issue a prospectus, that the defendant's "sales do not qualify for liability under § 12(a)(2) of the Securities Act"). Here, there was no such obligation upon Defendants.

Plaintiffs' reference to allegations that "Defendants disseminated brochures, emails, and videos to the public," and their reliance on *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1345, (11th Cir. 2022), does not save their amorphous Section 12(a)(2) claim. Defs.' Br. at 14–15. *Wildes* does not endorse the position that brochures, emails, and videos related to a *private* offering are sufficient to constitute a prospectus such that there is liability for a violation of § 12(a)(2). Indeed, *Wildes* does not address a claim under § 12(a)(2) at all,[7] but rather whether the promotion of a security in a mass communication and corresponding solicitation is sufficient to confer a defendant with a statutory seller designation. *Id.* at 1345–46. There was no mass communication alleged here; nothing of the sort.

## b. Plaintiffs' Section 12(a)(1) Claim (Count II) Should be Dismissed As Untimely

Plaintiffs do not contest that all pre-April 18, 2024 Section 12(a)(1) claims are untimely under Section 77m's one year limitations period. *See* Pls.' Opp'n Br. at 16

---

[7] The underlying district court decision is similarly devoid of a discussion of a Section 12(a)(2) claim. *See generally In re BitConnect Sec. Litig.*, No. 18-cv-80086, 2019 WL 9171208 (S.D. Fla. Nov. 15, 2019).

(asserting now that Plaintiffs have "limited Count II to the only transactions within the one-year period"). Accordingly, dismissal is proper.

Aries's post-April 18, 2024 claims, too, are untimely under that Section's three-year repose period. Section 77m states that "[i]n no event" shall a claim be brought "more than three years after the security was bona fide offered to the public." The vast majority of courts define "bona fide offered to the public" to mean that the three-year repose period begins when the unregistered security is first "genuinely" offered for sale to the public. *See P. Stolz Fam. P'Ship L.P. v. Daum*, 355 F.3d 92, 99 (2d Cir. 2004). Even the SEC supports the "first offered" interpretation of Section 77m's three-year repose period for Section 12 claims. *Id.* at 105 (citing SEC's *amicus* brief for "additional evidence suggesting that Congress intended the three-year period to begin to run when a security is *first* sold to the public"). The Complaint was filed more than three years after the REAL Loan Agreements allegedly were first offered publicly. Thus, dismissal is appropriate.

Plaintiffs urge this Court to reject the mainstream interpretation by citing to the reasoning of an unpublished, Gerald Ford-era decision from the Southern District of Florida—*In re Bestline Prods. Sec. & Antitrust Litig.*, MDL No. 162-Civ, 1975 WL 386 (S.D. Fla. Mar. 21, 1975)—and *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1064 (D. Minn. 2003) (applying *Bestline*). Pls.' Opp'n Br. at 16–17. In doing so, they fail to acknowledge the multitude of decisions that have rejected

*Bestline's* "last public offering" test in the 50 years since it was decided.[8] Indeed, *P. Stolz*—one of the few circuit opinions to address this issue—discusses *Bestline* at length and soundly rejects its reasoning in favor of the "first-offered" test. 355 F.3d at 100–06 (holding "the *vast* majority of courts to consider [Section 77m's three-year-repose period] have impliedly or expressly found that the three-year period begins when the security is *first* bona fide offered" and noting "[i]n contrast, we have found only three courts [including *Bestline*], all district courts, that have adopted the last-offered test" (emphasis added)). This Court, too, should apply the first-offered test in accordance "with the SEC and the majority of courts and commentators that have spoken to the issue." *Id.* at 106. Because Drive Planning first offered the REAL loan opportunity on September 22, 2020, Section 77m's three-year repose period expired on September 22, 2023 and Plaintiff's Section 12(a)(1) claim (Count II), filed on April 17, 2025, must be dismissed.

## IV.    PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs lack standing because (a) Defendants are not "statutory sellers"; and,

---

[8] *See, e.g., Hornbeck v. Boyne USA, Inc.*, Case No. 1:24-cv-682, 2025 WL 2355212, at *17–20 (W.D. Mich. Aug. 14, 2025) (analyzing both *Bestline* and *Deutsche Bank* and applying the first-offered set forth in *P. Stolz*); *Zakinov v. Ripple Labs, Inc.*, Case No. 18-cv-06753, 2020 WL 922815, at *8 (N.D. Cal. Feb. 26, 2020) (adopting the "first-offered rule" as "better reasoned than its last-offered counterpart"); *Dendinger v. First Nat'l Corp.*, Civ. A. No. 87-4611, 1989 WL 85070, at *8 (E.D. La. July 27, 1989) (declining to apply the last-offered approach in *Bestline*); *Morley v. Cohen*, 610 F. Supp. 798, 815–16 (D. Md. 1985) (same).

in all events, (b) the individual Plaintiffs never "purchased" the alleged securities. Their Section 12 and NJ USL[9] claims must, therefore, be dismissed.

### a. Defendants Are Not "Statutory Sellers" of the Alleged Securities

Plaintiffs have failed to sufficiently allege that Defendants were "statutory sellers" who "solicit[ed] the purchase" of a security. *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). Plaintiffs provide no meaningful rebuttal to Defendants' argument that allegations in the Amended Complaint are insufficient to establish that Defendants were "statutory sellers." They argue that their allegations comprise "multiple direct solicitation acts," Pls.' Br. at 20, but the paragraphs of the Amended Complaint that they cite—including allegations that Defendants furnished Drive Planning marketing documents and website links, contacted Plaintiffs via email regarding Drive Planning's products, and informed Plaintiffs that a forensic accountant reviewed Drive Planning's finances, *id.* (citing Am. Compl. ¶¶ 49, 52, 56, 57, 83, 95)—are insufficient in view of the Plaintiffs' extensive direct interactions with Drive Planning that are apparent from their pleading, *see* Defs.' Br. at 20–21.

Remarkably, Plaintiffs do not even address Plaintiff Carlson's sworn statement that he was introduced to Drive Planning by his "friend" (Plaintiff

---

[9] *See*, *e.g.*, *Zendell v. Newport Oil Corp.*, 544 A.2d 878, 882–83 (N.J. Super. Ct. App. Div. 1988) (citing the *Pinter* standard in assessing whether defendant was a "seller" under NJUSL); s*ee also In re Nat'l Reality Inv. Advisors, LLC*, No. 22-br-14539, 2024 WL 4481067, at *15 (Bankr. D.N.J. Oct. 11, 2024) (same).

Salerno). Moran Decl., Ex. E, ¶ 3 ("I became interested in the REAL program when I learned that my friend was receiving the returns Drive Planning had promised to him."). In his sworn declaration filed in the SEC Action, Plaintiff Carlson detailed his own direct interactions with the Drive Planning Parties and made no mention of Defendants. *See generally id.* Plaintiffs' allegations are insufficient to meet the "high threshold" for establishing that Defendants' limited contact with Plaintiffs rises to the level of "active" solicitation sufficient to render Defendants "statutory sellers." *See In re AirGate PCS, Inc. Sec. Litig.*, No. 1:02-cv-1291, 2006 WL 8431172, at *4 (N.D. Ga. Feb. 28, 2006) (collecting cases).[10]

Plaintiffs point to the allegation that an IWS employee informed Carlson that a "forensic accountant" reviewed Drive Planning's books, the books "all checked out," and that that was the "basis for IWS's confidence in Drive Planning as a viable investment." Am. Compl. ¶ 57. But that alleged representation—which is not alleged to have been false—was made *after* Plaintiff Aries already had negotiated multiple REAL Loan Agreements directly with Drive Planning. *See id.* ¶ 56. Moreover, that representation was made only to Carlson who was not, and is not alleged to have

---

[10] *See also Pinter*, 486 U.S. at 651 n.27 (holding remote involvement or mere "participat[ion] in soliciting the purchase" of a security is insufficient to confer Section 12 liability); *In re CNL Hotels & Resorts, Inc.*, No. 04-cv-1231, 2005 WL 2291729, at *5 (M.D. Fla. Sep. 20, 2005) ("Mere conclusory allegations that a defendant solicited the sale of stock and was motivated by financial gain to do so are insufficient to state a claim under Section 12.").

been, a *client* of Defendants. Indeed, Carlson was not, and is not alleged to have been, *introduced* by Defendants to the REAL program. It was Carlson's "friend" that introduced him to Drive Planning, leading Carlson to negotiate REAL Loan Agreements on behalf of Plaintiffs ECRE1 and Huckleberry directly with Drive Planning. Moran Decl., Ex. E, ¶¶ 2–3. Plaintiffs do not, and cannot, allege otherwise.

Plaintiffs unsuccessfully attempt to distinguish cases cited in Defendants' moving brief. *See* Pls.' Opp'n Br. at 18–21. For example, Plaintiffs selectively quote *Rensel v. Centra Tech, Inc.,* No. 17-cv-24500, 2019 WL 2085839 (S.D. Fla. May 13, 2019), to argue that they need not allege that the Defendants' actions "*resulted in*" the purchase of the alleged security, Defs.' Br. at 18–19, but ignore that case's operative language: "Therefore, 'a plaintiff must allege not only that the defendant actively solicited investors, *but that the plaintiff purchased securities as a result of that solicitation*.'" 2019 WL 2085839, at *3 (quoting *In re CNL Hotels & Resorts, Inc.*, 2005 WL 2291729, at *5) (emphasis added).[11] Plaintiffs have failed to establish that it was Defendants' introductory information, as opposed to their own extensive direct interactions with Drive Planning, that resulted in their purchase of the alleged securities. Because Plaintiffs have not sufficiently alleged that Defendants were

---

[11] Plaintiffs also take pains to distinguish *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521 (11th Cir. 1991) and *Youngers v. Virtus Inv. Partners, Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), which Defendants appropriately cited in support their argument that providing introductory information is insufficient to establish that the Defendants were "statutory sellers."

statutory "sellers" of the securities at issue, Plaintiffs lack standing to sue them as such.

**b.  Carlson and Salerno Were Not "Purchasers" of the Alleged Securities**

Because Carlson nor Salerno were never a party to any REAL Loan Agreement cited in the Complaint, Am. Compl., ¶ 56; Ex. H, they lack standing to sue as "purchasers" of the alleged securities. *See Licht v. Watson*, 567 F. App'x 689, 691 (11th Cir. 2014) (holding that a "seller's" liability "is limited 'to the person purchasing such security from him.' Thus, a person only has standing to sue under Section 12 if he purchased securities from the defendant." (quoting 15 U.S.C. § 77l(a)(2))). The agreements annexed to the Amended Complaint are between Drive Planning on the one hand, and (1) Aries, (2) ECRE1, (3) Huckleberry, and (4) IRAR Trust FBO Dean Ralph Salerno on the other hand. Am. Compl., ¶ 56; Ex. H. They make no reference to the individual Plaintiffs. Instead of conceding this uncontroversial point, Plaintiffs argue that the absence of *any* purchaser's "signature" on the REAL Loan Agreements somehow could confer standing on Salerno and Carlson to sue as "purchasers," even though they are not parties to, referenced in, nor have any rights under those agreements. *See* Pls.' Opp'n Br. at 21. Under *Licht* and the Plain language of Section 77l(a), the individual Plaintiffs lack standing and their claims must be dismissed for this further reason.

## V.     PLAINTIFFS STATE LAW CLAIMS ALSO FAIL[12]

Plaintiffs' state law claims should be dismissed for the reasons set forth in Defendants' moving brief. Plaintiffs' opposition warrants only a limited response:

**As to Plaintiffs' NJ USL claim (Count III)**, Plaintiffs' claims fall woefully short of pleading scienter with requisite specificity. To try and save their claim, Plaintiffs reference an alleged representation an IWS employee made to Plaintiff Carlson (and no one else), which they do not even allege was false. Nor have Plaintiffs sufficiently pled "privity." They attempt to distinguish the Ninth Circuit's decision in *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 653 F. App'x 553 (9th Cir. 2016), by stating that the defendant there was a "placement agent" and not a "seller" and that Defendants solicited them. *See* Pls.' Opp'n Br. at 23. However, they make no meaningful argument as to how the Defendants—who did not transfer the securities, were not a party to the "sale" transaction, were not in the chain of title, and did not receive or remit to Drive Planning the Plaintiffs' purchase money—could be deemed "in privity" with Plaintiffs when the agent in *Lord Abbett*, who was even more involved in the subject transaction, was not.

**As to Plaintiffs' Claims for Negligence (Count IV) and Breach of**

---

[12] As argued in Defendants' moving brief, if the Court dismisses Plaintiffs' Section 12 claim, then it should also dismiss Plaintiffs' state law claims for lack of subject matter jurisdiction. Defs.' Br. at 22 n.11; *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004). Plaintiffs do not contend otherwise.

**Fiduciary Duty (Count V)**, Plaintiffs' opposition points to no allegations plausibly establishing that they relied on IWS for corporate due diligence, audit reports, financial analyses or the like regarding Drive Planning or the REAL Loan Agreements. Defendants relative lack of involvement, as contrasted with Plaintiffs' extensive direct contact, investigation, negotiation, and transacting with Drive Planning on the REAL Loan Agreements described in Section IV.a. of Defendants' moving brief—none of which the opposition rebuts—demonstrates that Plaintiffs have failed to establish either a duty or breach necessary to establish negligence or breach of fiduciary duty. Those claims must be dismissed.

**As to the claims against Maniaci**, Plaintiffs opposition cites to no allegations in the Amended Complaint that plausibly could establish such close personal involvement by Maniaci in the alleged torts that personal liability under the under New Jersey's participation theory could be established. Pls.' Opp'n Br. at 30–32. Plaintiffs have not sufficiently pled (1) a duty of care to a third person, (2) delegation by IWS of that duty to Maniaci, and/or (3) breach of the duty by Maniaci personally, all of which are required to establish a claim against Maniaci in his personal capacity. *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 303, 788 A.2d 268, 272 (2002). Instead, Plaintiffs' vague allegations seem to name Maniaci merely because of his status as an officer, and not because of his personal involvement in the alleged torts. Such allegations are insufficient and claims against Maniaci must be dismissed.

Respectfully submitted, this 2nd day of September 2025.

/s/ Eric W. Moran
Eric W. Moran (*Pro Hac Vice*)
Eric.Moran@gtlaw.com
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ  07932
T: (973) 360-7900

Justin K. Victor
Georgia Bar No. 105516
VictorJ@gtlaw.com
**GREENBERG TRAURIG, LLP**
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, Georgia 30305
T: (678) 553-2100

Justin M. Schettino (*Pro Hac Vice*)
Justin.Schettino@gtlaw.com
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ  07932
T: (973) 360-7900

*Attorneys for Defendants*
*Integrated Wealth Strategies, LLC*
*and Joseph C. Maniaci, Jr.*

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

I hereby certify that I prepared the foregoing **DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS THIS ACTION PURSUANT TO THE COURT'S AUGUST 13, 2024 ORDER AND FED. R. CIV. P. 12(b)(1), 12(b)(6), AND 12(b)(7)** in Times New Roman, 14-point font in accordance with L.R. 5.1(C) and in accordance with the Court's Standing Order, as modified by the Court's Order granting Defendants' expedited motion for leave to file excess pages. *See* D.E. 30, 31.  Further, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Brian Pastor
bpastor@sonnlaw.com

Jeffrey R. Sonn
jsonn@sonnlaw.com

Ross M. Good
ross@thegoodlawgroup.com

Shawn M. Good
info@thegoodlawgroup.com

DATED: September 2, 2025

/s/ Eric W. Moran
Eric W. Moran (*Pro Hac Vice*)