# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| ARIES LEGACY, LLC, Delaware corporation, CHRISTIAN CARLSON, DEAN RALPH SALERNO, ECRE1 LLC, an Arizona corporation, HUCKLEBERRY GLAM, INC., an Arizona corporation individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>INTEGRATED WEALTH STRATEGIES LLC., a New Jersey Corporation, and JOSEPH C. MANIACI, JR., individually,<br><br>Defendants. | Case No: 1:25-cv-02118-VMC |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 9(b)

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND..............................................................................3

ARGUMENT .....................................................................................................6

   I.   ARIES LEGACY'S CLAIM UNDER SECTION 12(a)(1) OF THE SECURITIES ACT (COUNT I) MUST BE DISMISSED AS PLAINTIFFS FAIL TO SATISFY RULE 9(b)'s HEIGHTENED PLEADING STANDARD.................................................................................................6

      a.  Aries Legacy's Section 12(a)(1) Claim Based on Allegedly False Representations and Omissions Must Satisfy Rule 9(b) in the Eleventh Circuit..................................................................................................8

      b.  Aries Legacy's Section 12(a)(1) Claim Fails to Satisfy Rule 9(b)'s Particularity Requirements...................................................................9

   II.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' REMAINING STATE CLAIMS ..........................................14

   III. PLAINTIFFS' STATE LAW CLAIMS FAIL TO PLAUSIBLY STATE VALID CAUSES OF ACTION ...................................................................15

      a.  Plaintiffs' NJUSL Claims (Counts II–III) Fail to Plausibly Allege a Valid Cause of Action...................................................................................15

      b.  Plaintiffs' "Professional Negligence/Negligent Misrepresentation" Claim (Count IV) Fails to Plausibly Plead that Defendants Had a Duty to Them, or Breached That Duty ...............................................................17

      c.  Plaintiffs' Breach of Fiduciary Duty Claim (Count V) Must be Dismissed for Failure to Allege a Fiduciary Duty or a Breach ...................................20

      d.  Plaintiffs Fail to Establish the Elements of an Unjust Enrichment Claim (Count VI) ...............................................................................................22

      e.  Plaintiffs' Common Law Tort Claims Against Maniaci in his Individual Capacity Must be Dismissed...................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alpharma Inc. Sec. Litig.*,
  372 F.3d 137 (3d Cir. 2004) ...............................................................16

*Barbee v. Amira Nature Foods, Ltd.*,
  Civil Action No. 21-12894 (MAS) (DEA), 2024 WL 626302
  (D.N.J. Feb. 14, 2024) ........................................................................15

*Barron v. Lampley*,
  No. 4:16-CV-0038, 2016 WL 5334472 (N.D. Ga. Jan. 25, 2016) ......11

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) .............................................................16

*Carol Gamble Tr. 86 v. E-Rex, Inc.*,
  84 F. App'x 975 (9th Cir. 2004) ...........................................................8

*Charles Bloom & Co. v. Echo Jewelers*,
  652 A.2d 1238 (N.J. Super. Ct. App. Div. 1995) ...............................25

*Durr Mechanical Construction, Inc. v. PSEG Fossil, LLC*,
  516 F. Supp. 3d 407 (D.N.J. 2021)......................................................18

*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985) ...............................................................18

*Est. of Parr v. Buontempo Ins. Servs.*,
  No. L-2500-06, 2006 WL 8551632 (N.J. Super. Sep. 08, 2006) ........21

*F.G. v. MacDonnell*,
  696 A.2d 697 (N.J. 1997) ...................................................................22

*H. Rosenblum, Inc. v. Adler*,
  461 A.2d 138 (N.J. 1983) ...................................................................19

*Hauger v. SDWC Fin., LLC*,
  1:25-cv-01058-VMC (N.D. Ga.) ..................................................*passim*

*Institutional Invs. Grp. v. Avaya Inc.*,
    564 F.3d 242 (3d Cir. 2009) ...............................................................16

*Intellicig USA LLC v. CN Creative Ltd.*,
    1-15-CV-01832-AT, 2016 WL 5402242 (N.D. Ga. July 13, 2016)...................18

*Kaufman v. i-Stat Corp.*,
    754 A.2d 1188 (N.J. 2000) ...............................................................17

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
    No. 12-cv-03694, 2014 WL 3417941 ...............................................17

*McGlynn v. Schultz*,
    231 A.2d 386 (N.J. Super. Ct. App. Div. 1967) ...............................25

*Mergens v. Dreyfoos*,
    166 F.3d 1114 (11th Cir. 1999) .......................................................15

*Otto Candies, LLC v. Citigroup Inc.*,
    137 F.4th 1158 (11th Cir. 2025) ...............................................10, 11

*Pabon v. Hackensack Auto Sales, Inc.*,
    164 A.2d 773 (N.J. Super. Ct. App. Div. 1960) ...............................17

*Raney v. Allstate Ins. Co.*,
    370 F.3d 1086 (11th Cir. 2004) .......................................................14

*Robsac Indus., Inc. v. Chartpak*,
    497 A.2d 1267 (N.J Super. Ct. App. Div. 1985) ...............................25

*Roll v. Singh*,
    No. 07-cv-4136, 2008 WL 3413863 (D.N.J. June 26, 2008), *as
    amended* (Apr. 12, 2010) ...............................................................17

*Saltiel v. GSI Consultants, Inc.*,
    788 A.2d 268 (N.J. 2002) ...........................................................24, 25

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip
    Morris Companies, Inc.*,
    75 F.3d 801 (2d Cir. 1996) ...............................................................16

*Snyder v. Farnam Cos.*,
    792 F. Supp. 2d 712 (D.N.J. 2011)...................................................23

iv

*St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*,
   No. 04-cv-4540, 2005 WL 1199045 (D.N.J. May 18, 2005) .............................20

*Travelers Indem. Co. v. Cephalon, Inc.*,
   620 F. App'x 82 (2015) ......................................................................................18

*VRG Corp. v. GKN Realty Corp.*,
   641 A.2d 519 (N.J. 1994) ..................................................................................23

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ....................................................................8, 23

*Wiley v. Hughes Cap. Corp.*,
   746 F. Supp. 1264 (D.N.J. 1990)........................................................................15

*Williamson v. Linarducci*,
   1:24-cv-01526-TWP-MJD (S.D. Ind.)............................................................1, 15

*Zendell v. Newport Oil Corp.*,
   544 A.2d 878 (N.J. Super. Ct. App. Div. 1988) .................................................19

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) .........................................................................11

## Statutes

28 U.S.C. § 1367(c)(3)..............................................................................................14

Securities Act of 1933 Section 12(a)(1) ...........................................................*passim*

## Other Authorities

Rule 9 ............................................................................................................................8

Rule 9(b)...............................................................................................................*passim*

## PRELIMINARY STATEMENT

In the latest iteration of their pleading, Plaintiffs have reanimated allegations from dismissed claims, or borrowed ones from the Securities and Exchange Commission's ("SEC") action[1] against alleged Ponzi schemers Drive Planning, LLC ("Drive Planning") and its executives (the "SEC Action"), and misdirected those allegations toward defendants Integrated Wealth Strategies, LLC ("IWS") and Joseph C. Maniaci, Jr., who according to those same SEC filings were misled by Drive Planning.[2]

This case is one of multiple copy-cat putative class actions against alleged "agents" of Drive Planning that Courts have dismissed. *See Hauger v. SDWC Fin., LLC*, 1:25-cv-01058-VMC, Dkt. No. 32 (N.D. Ga. Nov. 3, 2025); *Williamson v. Linarducci*, 1:24-cv-01526-TWP-MJD, 2025 WL 2379272 (S.D. Ind. Aug. 15, 2025). This Court should reach the same conclusion here.

---

[1] The Court properly may consider pleadings in the SEC Action because the SACA expressly and repeatedly refers to those pleadings. *See Sheely v. New Rez, LLC*, Civil Action No. 1:25-cv-3964-SEG-CMS, 2025 WL 4093242, at *3 n.3 (N.D. Ga. Dec. 5, 2025) ("[W]ithout converting the motion to dismiss to a motion for summary judgment, the Court also has taken judicial notice of relevant public filings. . . ."); *Universal Express, Inc. v. Sec. Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006).
[2] Maniaci and IWS employee Angelo Sandone have assisted the SEC from the outset in an attempt to address the damage done by the Ponzi schemers. Indeed, the SEC submitted declarations of Maniaci and Sandone in support of its motion seeking emergency relief including a temporary restraining order, preliminary injunction, appointment of a receiver, and asset freeze. *Drive Planning, LLC*, 1:24-cv-03583-VMC, Dkt. Nos. 2-12, 2-13. These declarations establish that Defendants were duped just as Plaintiffs were. *See id.*

1

The new allegations in Plaintiffs' Second Amended Class Action Complaint ("SACA") do nothing to improve the pleading that this Court previously found to fall short of Rule 9(b)'s pleading requirement. In support of **Count I** (Section 12(a)(1) of the Securities Act of 1933 (the "Securities Act")), Plaintiffs allege that Defendants made misrepresentations about the existence of properties in Georgia, Florida and Indiana, and regarding Mr. Maniaci's future intent to invest in Drive Planning. Neither allegation passes Rule 9(b) muster. Taking Plaintiffs' allegations as true, Defendants' alleged statements concerning the collateral property are neither false nor material because they are consistent with information of record on this motion to dismiss that (a) the collateral properties did exist, and (b) title to those properties was held in the names of Drive Planning or its principal, Russell Todd Burkhalter. Plaintiffs also fail to allege facts sufficient to show that Mr. Maniaci's statement related to his own personal investment plans was false when made or plausibly linked to Plaintiffs' own investment decisions. Plaintiffs' remaining alleged misrepresentations improperly lump all of the Defendants together and fail to identify the specific statement or omissions at issue. Count I should be dismissed.

Aries Legacy's Section 12(a)(1) claim is the only basis for federal subject matter jurisdiction. With that claim dismissed, the Court should dismiss the remaining state claims for lack of subject matter jurisdiction. If the Court were to reach these claims, it would find that they fail for additional reasons:

2

- **Counts II–III** (New Jersey Uniform Securities Law ("NJUSL")) similarly fail Rule 9(b)'s requirements for pleading fraud and fail to allege "privity" as required under New Jersey law.
- **Count IV** (Professional Negligence/Negligent Misrepresentation) fails to satisfy the Rule 9(b) pleading standard and along with **Count V** (Breach of Fiduciary Duty) both claims fail to plausibly allege a duty to Plaintiffs, a breach, or that Defendants even *could* have detected the concealed fraud had there been a duty.
- **Count VI** (Unjust Enrichment) fails to allege that Plaintiffs conferred a benefit upon Defendants for which they expected remuneration. An unjust enrichment claim does not fit this matter and must be dismissed.

Plaintiffs assert no plausible allegations that establish personal liability against Maniaci for the common law torts asserted in Counts IV through VI.

For these reasons, the SACA—the third iteration of their pleading—should be dismissed in its entirety with prejudice, as Plaintiffs have already had two opportunities to amend and further amendment would be futile.

## FACTUAL BACKGROUND

Plaintiffs allege that Burkhalter, through his company, Drive Planning, orchestrated a "massive Ponzi scheme" that victimized them and other investors nationwide. (SACA, Dkt. No. 36 ¶¶ 1–2.) "Burkhalter and Drive Planning induced investors to invest large sums of money," in the alleged securities at issue—Drive Planning's "Real Estate Acceleration Loan" program (the "REAL Loan Agreements")—with a promised high return," and to "participate in what, unbeknownst to [investors], was a fraudulent scheme." (*Id.*)

Plaintiffs allege that "[d]efendant IWS is in the business of setting up

3

Charitable LLC's ('CLLC's') for people wishing to maximize tax benefits." (*Id.* ¶ 4.) Plaintiffs allege that IWS and Maniaci became "agents" of Drive Planning who "induced" them to enter REAL Loan Agreements. (*Id.*) Plaintiffs claim that IWS and Maniaci sent them "materials created by Drive Planning" that described the REAL Loan Agreement program. (*Id.* ¶ 5.) Plaintiffs also allege that Drive Planning paid IWS and Maniaci for "each REAL investment sold." (*Id.* ¶¶ 38–39.)

Plaintiffs allege that defendants did not "disclose[]" that investor disbursements would be funded by "the principal invested by a later REAL investors" (*id.* ¶¶ 45–46), but do not allege IWS or Maniaci *knew* those facts. Plaintiffs allege Defendants were "agents" of Drive Planning (*id.* ¶¶ 38, 55), but not that they were in on the scheme.

Plaintiffs allege that Defendants provided investors with a one-page document generated by Drive Planning (and not Defendants), with a link to Drive Planning's website, (*id.* ¶ 56,  Dkt. No. 36-1 (Ex. A)); a link to a video on Drive Planning's website in which Burkhalter purports to describe the REAL Opportunity (Dkt. No. 36 ¶ 58; Dkt. No. 36-3 (Ex. C)); and (3) a one-page document on Drive Planning letterhead, entitled "Portfolio" that purports to describe properties used as collateral for the REAL Loan Agreements (Dkt. No. 36 ¶ 59, Dkt. No. 36-4 (Ex. D)). Plaintiffs' "claims arise primarily from [these] uniform written materials and standardized communications disseminated to all investors." (Dkt. No. 36  ¶ 60.)

While silent as to who at IWS provided those materials, or what Plaintiffs received them, Plaintiffs allege they were provided "without conducting any due diligence to confirm that returns promised to investors were actually being paid from proceeds identified on the marketing materials," (*id.* ¶ 67), and with "no basis for assuming everything would be okay or that investors would be protected" (*id.* ¶ 69). Plaintiffs do not allege that defendants were underwriters, research analysts, otherwise duty-bound to conduct financial due diligence on Drive Planning, or that Defendants even *could have* discovered Drive Planning's concealed Ponzi scheme.

As alleged at paragraph 80 and Exhibit G of the SACA, Plaintiffs purportedly purchased REAL Loan Agreements in varying amounts. Each REAL Loan Agreement was on Drive Planning letterhead, identified the respective Plaintiffs as "Lender," and was countersigned by Burkhalter. (*Id.* ¶ 80, Dkt. No. 36-7 (Ex. G).) Neither IWS nor Maniaci negotiated or signed the agreements. (*Id.*)

Plaintiffs claim that IWS employee Angelo Sandone told Carlson that IWS had a forensic accountant "review Drive Planning's books and they all checked out which was the basis for IWS's confidence in Drive Planning as a viable investment." (Dkt. No. 36 ¶ 81.) Plaintiffs cite no corresponding communication. Plaintiffs further claim that Maniaci "induce[d]" Salerno to invest with the forward-looking statement in December 2023 that Mr. Maniaci planned to invest his personal money in REAL Loan Agreements. (*Id.* ¶ 82, Dkt. No. 36-8 (Ex. H) at 6). By then, Salerno already

5

had invested $475,100.00 in REAL Loan Agreements. (Dkt. No. 36-9, Ex. I at 5.)

In the SACA, Plaintiffs add allegations that Defendants made misstatements regarding Georgia, Florida and Indiana properties (listed in Exhibit G to their pleading) that Drive Planning purportedly "secured" as collateral for investors' money. (Dkt. No. 36 ¶ 84,  Dkt. No. 36-8 (Ex. H) at 4 ("I had a close friend in Commercial real estate review all the land holdings. All good.")). However, filings in the SEC Action show that Drive Planning maintained title to those properties in the name of Drive Planning or Burkhalter individually and thereby gained the confidence of investors and referral sources. *See*, *e.g.*, *Sec. Exch. Comm'n v. Drive Planning, LLC*, 1:24-cv-03583-VMC, Dkt. No. 1 ¶¶ 113–17 (acknowledging that title to purported collateral properties in Georgia, Florida, and Indiana was held in the name of Drive Planning or Burkhalter).[3]

### ARGUMENT

**I.    ARIES LEGACY'S CLAIM UNDER SECTION 12(a)(1) OF THE SECURITIES ACT (COUNT I) MUST BE DISMISSED AS PLAINTIFFS FAIL TO SATISFY RULE 9(b)'S HEIGHTENED PLEADING STANDARD**

Rule 9(b)[4] applies to Aries Legacy's Section 12(a)(1) (Count I). In support of

---

[3] The Receiver is pursuing turn-over and liquidation of the very same properties. *See*, *e.g.*, *Drive Planning, LLC*, 1:24-cv-03583-VMC, Dkt. No. 61 at 20–25, 27–30; Dkt. No. 61-1 at 4–6 (listing Georgia, Florida, and Indiana properties subject to forfeiture and liquidation in Receiver's initial status report);  Dkt. No. 84 at 21–31 (listing same properties in second status report).

[4] Rule 9(b) provides that "[i]n alleging fraud or or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

that claim, Aries Legacy's accuses Defendants of offering, selling, and/or soliciting the sale of the REAL Loan Agreements "by and through making untrue and/or misleading statements of material fact. . . ." (Dkt. No. 36 ¶ 111; *see also id.* ¶ 118 ("At the time they invested in the REAL agreements, Plaintiffs did not know that the representations made to them by Defendants were untrue and did not know that material facts described above were undisclosed.")). Plaintiffs allege throughout the SACA that Defendants fraudulently "induced" them to invest in the REAL Loan Agreements.[5] (*See id.* ¶¶ 4, 16–17, 20, 71, 74, 82–83, 93, 112–14, 128, 130, 133–35, 149, 154–55, 188.) Plaintiffs allege in conclusory fashion that Defendants' were involved in Drive Planning's "massive Ponzi Scheme." (*See*, *e.g.*, *id.* ¶ 1 ("This is an action against IWS and Maniaci for promoting a massive Ponzi scheme orchestrated by [Burkhalter and Drive Planning].") Then, in "shotgun pleading" fashion, Paragraph 107 of the SACA "restate[s] and reallege[s]" those fraud paragraphs "as though fully set forth" in their Section 12(a)(1) claim. (*Id.* ¶ 107.)

---

To satisfy Rule 9(b)'s particularity requirements, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025) (citations omitted). The "[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

[5] *Hauger*, 1:25-cv-01058, Dkt. No. 32 at 23 (applying rule 9(b) to Section 12(a)(1) and 12(a)(2) where "Plaintiff's theory of liability is based on alleged false representations and misleading omissions that 'induced' Plaintiff to purchase securities").

7

Plaintiffs cannot sully Defendants' good will and reputation by implicating them in a fraud without incurring the strictures of Rule 9(b). *Wagner*, 464 F.3d at 1278 (recognizing Rule 9(b)'s purpose is to "protect [the] good will and reputation" of a defendant accused of fraud).[6]

> **a.    Aries Legacy's Section 12(a)(1) Claim Based on Allegedly False Representations and Omissions Must Satisfy Rule 9(b) in the Eleventh Circuit**

In the Eleventh Circuit, nonfraud securities claims that are grounded in allegedly false representations and misleading omissions must be pled with particularity as required by Rule 9(b). *See Wagner*, 464 F.3d at 1278; *Hauger*, 1:25-cv-01058, Dkt. No. 32 at 23 (applying Rule 9(b)'s particularity requirement to plaintiff's Section 12(a)(1) claims); *see also Carol Gamble Tr. 86 v. E-Rex, Inc.*, 84 F. App'x 975, 978 (9th Cir. 2004) ("[T]he Shareholders' claim under section 12(a)(1) must be pleaded with 'particularity' under Federal Rule of Civil Procedure 9(b)." (citation omitted)); *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 639 (S.D.N.Y. 1999) (applying Rule 9(b) to a 12(a)(1) claim and dismissing claims where plaintiff "incorporate[d] by reference into the § 12(a)(1) claim each of the

---

[6] As this Court previously has held, Plaintiffs' effort at a "general disclaimer" in Paragraph 108 of the SACA is insufficient to "immunize the nonfraud claims from the Rule 9 requirements." *See Wagner*, 464 F.3d at 1278; *Hauger*, 1:25-cv-01058, Dkt. No. 32 at 21–22 (N.D. Ga. Nov. 3, 2025) ("But despite this conclusory disclaimer, a close read of the Amended Complaint confirms that Plaintiff's complaint sounds in fraud, not strict liability or negligence.").

preceding allegations in the complaint, which unambiguously sound in fraud").

> **b.** **Aries Legacy's Section 12(a)(1) Claim Fails to Satisfy Rule 9(b)'s Particularity Requirements**

Plaintiffs have failed to set forth particularized allegations required by Rule 9(b). In pleading Count I, Plaintiffs allege: "[i]n December 2023, Defendant Maniaci induced Plaintiff Salerno to invest in Drive Planning products, stating he was sending in a large sum of money himself the next day. In April 2024, Defendants induced Plaintiff Salerno to invest in promissory notes." (Dkt. No. 36 ¶ 114 (citing Dkt. No. 36-8 (Ex. H))).[7] Without specifying the purported representations, Plaintiffs allege "Defendants solicited Plaintiffs in person, over the telephone, through the mail, and through email." (Dkt. No. 36 ¶ 115.) That is the sum of the representations upon which Count I relies.

As it relates to Maniaci's purported statement made in December 2023, Exhibit H demonstrates that Maniaci purportedly texted Salerno on December 27, 2023 that he was planning to invest $100,000.00 in the REAL Loan Agreement the next day. (Dkt. No. 36-8, Ex. H at 6.) However, a forward-looking statement is insufficient to pass Rule 9(b) muster in a fraud-based claim. *Cf. Williams v. Encore Credit Corp.*, Civil Action No. 1:20-CV-1297-TCB-JSA, 2020 WL 7496845, at *7

---

[7] Exhibit H to the SACA is a series of text messages sent by Maniaci to Salerno that are not in chronological order but appear to have been sent from October 17, 2023 to April 2, 2024. (Dkt. No. 36-8.)

9

(N.D. Ga. 2020) ("[A] forward-looking statement is not basis for a fraud claim." (collecting cases)). Moreover, Plaintiffs' characterization of Mr. Maniaci's text ignores Salerno's pre-existing intention to put more money toward the REAL Loan Agreements, when he stated "[t]hinking about another 100 to make it 500." (Dkt. No. 36-8, Ex. H at 6.) This December 27, 2023, exchange occurred *months after* Plaintiff Aries Legacy, LLC already had invested approximately $475,000 in October 2023 (Dkt. No. 36-9, Ex. I at 5), and *months before* Aries Legacy's April 18, 2024 and June 5, 2024, REAL Notes at issue in Count 1. What is more, Salerno did not invest an additional $100,000.00 as he had stated. Rather, he invested $590,000.00 over three weeks later on January 18, 2024; and then, made subsequent transactions on February 21, 2024 ($100,000.00), March 7, 2024 ($245,000.00), and March 25, 2024 ($150,000.00). (Dkt. No. 36-9, Ex. I at 5.) It is not plausible that Mr. Maniaci's off-handed comment that he, too, intended to invest in a REAL Note induced those transactions.

Nor do Plaintiffs aver particularized allegations establishing "why [the representation was] false at the time [it was] made." *Hauger*, 1:25-cv-01058-VMC, Dkt. No. 32 at 24–25. To satisfy the pleading standard applicable to Plaintiff's fraud-like claims, a plaintiff must plead the "manner in which these statements misled the Plaintiffs." *Otto Candies, LLC*, 137 F.4th at 1178; *see also Hauger*, 1:25-cv-01058-VMC, Dkt. No. 32 at 24 ("[P]laintiff failed to 'identify the specific statements they

claim were misleading, who made them, when they were made, and why there were misleading.") (citation and quotations omitted)); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (noting that Rule 9(b) is satisfied where a plaintiff specifies how the statement was misleading).

Plaintiffs do not allege that Maniaci did not invest at all in the REAL Loan Agreements. Instead, they strain to allege that Mr. Maniaci's stated intent to invest *again*—and after Salerno already had invested substantially in REAL Notes—was somehow misleadingly induced Salerno. This allegation fails to satisfy Rule 9(b).

Plaintiffs' remaining allegations in the pleading of Count I—including the assertions that in April 2024,[8] Defendants induced Plaintiff Salerno to invest in promissory notes (Dkt. No. 36 ¶ 114) and the generalized statements that "Defendants solicited Plaintiffs in person, over the telephone, through the mail, and through email" (*id.* ¶ 115)—suffer from the same defect of failing to plead why the statements were false or misleading. Those allegations do not state (1) the challenged statements or misrepresentations; (2) the time, place, and person responsible for the statements; and (3) the content and manner in which these statements misled Plaintiffs. *See Otto Candies, LLC*, 137 F.4th at 1178; *Ziemba*, 256 F.3d at 1202. Those allegations also improperly "lump together all the Defendants." *Barron*, 2015

---

[8] The text messages exchanged on April 1–2, 2024, did not discuss the REAL Loan Agreement, and instead address Salerno's query related to "reasonable AI investments." (Dkt. No. 36-8, Ex. H at 2.)

WL 12591006, at *4 ("Under Rule 9(b) Plaintiffs must make specific allegations with respect to each Defendant and cannot lump together all the Defendants.").

Plaintiffs' allegation that Defendants believed Drive Planning owned certain real property and had taken certain steps to confirm as much fares no better. (*See, e.g.*, Dkt. No. 36 ¶ 84.) Plaintiffs do not allege that IWS identified the owner of the properties, assessed their value, or opined on the sufficiency of the collateral; they only allege that defendants had someone review information about the properties and conveyed those findings. *See id.* ("I had a close friend in Commercial real estate review all the land holdings. All good."). Plaintiffs say in conclusory fashion that those statements were "false," (*id.* ¶ 111), but aver nothing about "how they were false," or that IWS believed them to be false. *See Hauger* at 24-25. Nor can they.

The record properly before this Court demonstrates that title to the purported collateral properties was held in the name of Drive Planning or Burkhalter. *Drive Planning, LLC*, 1:24-cv-03583-VMC, Dkt. No. 1 ¶¶ 113–17; Dkt. No. 61 at 20–25, 27–30; Dkt. No. 61-1 at 4–6; Dkt. No. 84 at 21–31. Anyone looking at the title to the properties would see that they (a) existed; and (b) were owned by a Drive Planning entity or Burkhalter. Plaintiffs' allegation that Defendants simply confirmed as much to the Plaintiff is neither false nor material. At best, Plaintiffs' allegations about Defendants' statements related to the collateral displays a fundamental problem with Plaintiffs' pleading overall: that Defendants were misled

just as the Plaintiffs and other investors were. Such allegations cannot support allegations sound in fraud, such as Plaintiffs' claims.

This case is on all fours with *Hauger*, which this Court dismissed in its entirety. In *Hauger*, like here, the plaintiff alleged that the defendants induced him to invest in the REAL Loan Agreements based on misrepresentations. The Court summarized the plaintiff's allegations as including specific representations such as: "all investors' investments were backed by $95,000,000 million in assets"; "Drive Planning had security measures in place to protect all investors' investments"; and a similar statement, as alleged here, purportedly made on July 28, 2023 "*that all promissory notes were backed by land DRIVE currently owns* and when they buy more, they can intake more investments." *Hauger*, 1:25-cv-01058-VMC, Dkt. No. 32 at 24 (emphasis added). Unlike this case, the plaintiff in *Hauger* also alleged that in June 2024, the defendant stated that: "money needed to be wired immediately because Drive Planning would stop taking investments for a period of time and the promissory note associated with that transfer would be coming" but "omit[ed] the fact that Drive Planning's bank account had already been frozen." *Id.* at 10. Ultimately, the Court found that the plaintiff "fail[ed] to specify what statements were made, who made them, where they were made, how they were made, and *why they were false at the time they were made*." *Id.* at 24–25 (emphasis added). Plaintiffs' allegations here are just as sparse.

13

Plaintiffs fail to allege these properties were not held in the name of Drive Planning or Burkhalter. Plaintiffs' allegation that Defendants sent communications regarding the ownership of the properties fails to demonstrate that those communications were false, "why they were false at the time they were made," or that the statement was material. *Hauger*, 1:25-cv-01058-VMC, Dkt. No. 32 at 25. Ownership of the properties in the name of Drive Planning and Burkhalter was an instrument of Drive Planning's fraud that suggests IWS was misled just as the Plaintiffs were misled by Drive Planning's scheme. Those allegations are not false, do not establish inducement, and fail Rule 9(b)'s particularity requirements.

As it did in *Hauger*, the Court should conclude that this claim "falls below the 9(b) requirements and, accordingly, must be dismissed." *Id.* at 25.

## II.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' REMAINING STATE CLAIMS

Plaintiffs' Section 12(a)(1) claim raised by Aries Legacy is the only basis for federal subject matter jurisdiction. (Dkt. No. 36 ¶ 17.) If the Court dismisses the Section 12(a)(1) claim, then it should decline to exercise supplemental jurisdiction and dismiss Plaintiffs' remaining state claims for lack for subject matter jurisdiction.[9]

---

[9] *See* 28 U.S.C. § 1367(c)(3) (stating that district court "may decline to exercise supplemental jurisdiction" over state law claims if the court has dismissed "all claims over which it has original jurisdiction"); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any

## III.   PLAINTIFFS' STATE LAW CLAIMS FAIL TO PLAUSIBLY STATE VALID CAUSES OF ACTION

### a.   Plaintiffs' NJUSL Claims (Counts II–III) Fail to Plausibly Allege a Valid Cause of Action

Plaintiffs' claims under the NJUSL (Counts II–III) fail under Rule 9(b) for the same reasons that Aries Legacy's claim under Section (12)(a)(1) (Count I). *See Wiley*, 746 F. Supp. at 1301 (stating there is "no reason to believe the requirements of [the NJUSL] are more or less stringent than federal law"); *Barbee v. Amira Nature Foods, Ltd.*, Civil Action No. 21-12894 (MAS) (DEA), 2024 WL 626302, at *7 n.9 (D.N.J. Feb. 14, 2024). Accordingly, to the extent that Plaintiffs invoke the NJUSL's strict liability provisions, Plaintiffs' causes of actions against Defendants under the NJUSL must also fail for failure to plead with particularity as required by Rule 9(b). *See supra* Section I.b.

Plaintiffs fail to allege with particularity that defendants knew of the untruth or omission and intended to deceive. The closest that Plaintiffs come to alleging that Plaintiffs knew of the fraud are offhanded allegations including: "[d]efendants were aware, or should have been aware, that their investors' money was unsecured, and

---

remaining state claims when, as here, the federal claims have been dismissed prior to trial." (citing *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984))); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999); *see also Williamson*, 2025 WL 2379272, at *9 (denying as moot the motion dismiss state law claims after dismissing federal securities claim against similarly situated financial advisor arising from same Drive Planning fraud). There is no diversity jurisdiction in this case because both Aries Legacy and defendants are New Jersey residents.

15

that the investment vehicle was nothing more than a massive scheme to defraud"; "Defendants made each of the foregoing misrepresentations knowing they were false, or with reckless disregard for their truth or falsity"; and "Defendants knew or should have known." (Dkt. No. 36 ¶¶ 6, 138–39.) This is insufficient. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997) ("It is not enough for plaintiffs to allege generally that defendants 'knew or recklessly disregarded each of the false and misleading statements for which [they were] sued,' . . . plaintiffs must allege facts that could give rise to a 'strong' inference of scienter."); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 813 (2d Cir. 1996).

Beyond these conclusory allegations, Plaintiffs allege nothing to establish that Defendants knew about or recklessly disregarded Drive Planning's concealed Ponzi scheme. Because Plaintiffs' direct liability claim against Defendants under Count II fails, the indirect liability claim against Maniaci is similarly deficient and must be dismissed. *See* N.J. Stat Ann. 49:3-71(d) ("Every person who directly or indirectly controls a seller liable under subsection (a) of this section . . . are also liable jointly and severally with and to the same extent as the seller or investment advisor. . . ."); *Institutional Invs. Grp.*, 564 F.3d at 252; *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004).

Plaintiffs' NJUSL claims also fail to allege "privity" as required under New

16

Jersey law. *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1197 (N.J. 2000) ("The USL requires privity in securities-fraud actions and thus will not allow her to reach the issuer of her shares or its officers."); *Lord Abbett Mun. Income Fund, Inc. v. Asami*, No. 12-cv-03694, 2014 WL 3417941, at *15 (N.D. Cal. July 11, 2014), *aff'd*, 653 F. App'x 553 (9th Cir. 2016) (holding "the New Jersey Uniform Securities Law does require privity.").

Like the Plaintiff whose claims were dismissed in *Lord Abbett*, Plaintiffs here did not "purchase" the REAL Loan Agreements from Defendants. Neither IWS nor Maniaci signed the REAL Loan Agreements. *Cf. Roll v. Singh*, No. 07-cv-4136, 2008 WL 3413863, at *17 (D.N.J. June 26, 2008), *as amended*, (Apr. 12, 2010) (finding "privity" element of NJUSL satisfied "because the Redemption Agreement is a contract between [plaintiff] and [corporate defendant]"). Defendants did not pass title to securities. Nor did they receive the purchase money for securities. Plaintiffs' allegations that Drive Planning incentivized IWS with referral fees places IWS and Maniaci much *farther out of privity* with the Plaintiffs than S&Y in *Lord Abbett*, who received payments directly from its buyers.

**b.  Plaintiffs' "Professional Negligence/Negligent Misrepresentation" Claim (Count IV) Fails to Plausibly Plead that Defendants Had a Duty to Them, or Breached That Duty**

To assert a negligent misrepresentation claim, a plaintiff must plausibly allege a false statement, negligently made and justifiably relied upon, causing injury. *Pabon v. Hackensack Auto Sales, Inc.*, 164 A.2d 773, 784 (N.J. Super. Ct. App. Div.

17

1960). Plaintiffs' "Professional Negligence/Negligent Misrepresentation" claim fails to satisfy the Rule 9(b) pleading standard for the same reasons as discussed above. *See supra* Section I.b. The pleading of Count IV is replete with conclusory allegations related to falsity of representations purportedly made. (*See* Dkt. No. 36 ¶¶ 158, 160, 165.) Accordingly, dismissal is warranted on this basis alone. *See Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (2015) (applying Rule 9(b) to negligent misrepresentation claim and finding allegations related to the marketing of pharmaceuticals that conclusively alleged the statements "were deceptive, improper, false or misleading" did not satisfy the particularity burden); *Intellicig USA LLC v. CN Creative Ltd.*, 1-15-CV-01832-AT, 2016 WL 5402242, at *10 (N.D. Ga. July 13, 2016) (finding plaintiffs did not meet the pleading standard of Rule 9(b) in addressing claim for negligent misrepresentation).[10]

Plaintiffs have also failed to allege that Defendants' representations (*see* Dkt. No. 36 ¶¶ 158–60), did not have a valid basis. *See Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir. 1985) ("An opinion or projection, like any other representation,

---

[10] Plaintiffs' allegations "sound in fraud," as Plaintiffs allege Defendants were "a direct participant in the scheme, and knew or should have known the representations made were false." (Dkt. No. 36 ¶ 165.) The SACA and Count IV "specifically contain plenty of fraud and fraud-like allegations . . . so [Plaintiffs] cannot avoid Rule 9(b)." *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 420 (D.N.J. 2021) (finding claim was rooted in fraud as "'knew or should have known' allegations mean that the plaintiff is alleging a knowing, deliberate misrepresentation").

will be untrue if it has no valid basis, but a reasoned and justified statement of opinion, one with a sound factual or historical basis is not actionable." (citation and quotations omitted)). Plaintiffs conclusively allege that Defendants' representations were false. However, the reality is that Defendants were duped just as Plaintiffs were.

When a plaintiff seeks economic losses in connection with a securities transaction, New Jersey jurisprudence recognizes the tort of negligent misrepresentation principally with respect to statements made in audit reports. *See H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 142 (N.J. 1983). In such circumstances, a plaintiff may sue for negligent misrepresentation to recover "economic loss against the provider of a service." *Zendell v. Newport Oil Corp.*, 544 A.2d 878, 881 (N.J. Super. Ct. App. Div. 1988) (citing *H. Rosenblum*, 461 A.2d at 153).

Here, Plaintiffs allege that IWS was merely "in the business of setting up Charitable LLC's ('CLLC's') for people wishing to maximize tax benefits." (Dkt. No. 36 ¶ 4.) Plaintiffs did not look to IWS for corporate due diligence, audit reports, or financial analyses of Drive Planning or the REAL Loan Agreements. At most, Plaintiffs have alleged that Defendants provided introductory materials on Drive Planning, and then Plaintiffs interfaced directly with Drive Planning staff. Plaintiffs' negligent misrepresentation claim fails to allege either a duty or breach by IWS or Maniaci, and should be dismissed on this separate basis.

19

**c.    Plaintiffs' Breach of Fiduciary Duty Claim (Count V) Must be Dismissed for Failure to Allege a Fiduciary Duty or a Breach**

In the March 24th Opinion, the Court found that Plaintiffs failed to sufficiently plead that Defendants owed a fiduciary duty to Plaintiffs. (Dkt. No. 33 at 40–41.) The Court should reach the same conclusion here. To establish a claim for breach of fiduciary duty under New Jersey law, "a plaintiff must show that the defendant had a duty to the plaintiff, that the duty was breached, that injury to plaintiff occurred as a result of the breach, and that the defendant caused that injury." *St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n*, No. 04-cv-4540, 2005 WL 1199045, at *9 (D.N.J. May 18, 2005) (citation omitted).

Plaintiffs fail to plausibly allege that Defendants owed them a fiduciary duty with respect to the REAL Loan Agreements. Despite alleging Defendants "are in the business of setting up Charitable LLC's (CLLC's) for people wishing to minimize their taxes," Plaintiffs raise self-serving and conclusory allegations that Defendants "held themselves out" as financial/investment advisors without alleging any specific statements in which Defendants identified themselves as financial advisors or provided investment advice. (Dkt. No. 36 ¶¶ 179–81, 183, 185, 188–89.) Plaintiffs' vague attempt to address the Court's prior finding and impose a duty upon Defendants is artifice without any supporting allegations.

In any event, the existence of a fiduciary duty in the context of a securities transaction generally turns on who had control of—or "discretion" over—the

20

investment account. *Goodman v. Goldman, Sachs & Co.*, No. 10-cv-1247, 2010 WL 5186180, at \*13 (D.N.J. Dec. 14, 2010) ("In light of Plaintiff's failure to allege that Goldman Sachs maintained discretion over his investments, his breach of fiduciary duty claim fails to state a claim under New Jersey law."). As is clear from the text messages exchanged between Maniaci and Salerno as well as the actual promissory notes and communications between Plaintiffs and Drive Planning, Plaintiffs had control over their investments and in fact directly entered into the transactions with Drive Planning. (*See* Dkt. No. 36-7 (Ex. G); Dkt. No. 36-8 (Ex. H); Dkt. No. 36-10 (Ex. J).) Thus, a breach of fiduciary duty in the context of a failed securities transaction will not lie when the investment account is controlled by the plaintiff investor and not the defendant financial advisor. *See Est. of Parr v. Buontempo Ins. Servs.*, No. L-2500-06, 2006 WL 8551632, at \*4 (N.J. Super. Sep. 08, 2006) (citing *McAdam v. Dean Witter Reynolds, Inc.,* 896 F.2d 750, 767 (3rd Cir. 1990)). Even where a defendant advises a plaintiff improperly, absent a defendant's control over the account, a plaintiff will be deemed to have made the decision to purchase the security and there can be no breach of fiduciary duty. *Est. of Parr*, 2006 WL 2620504, at \*4 ("Assuming that Defendant did improperly advise Ms. Parr, . . . . she ultimately decided to make the investment [and,] [i]n the absence of [plaintiff's] control of the account, Defendant does not have a fiduciary duty to breach.").

While Plaintiffs allege in conclusory fashion that Defendants "induced" them

to enter REAL Loan Agreements, the SACA is clear that Plaintiffs interfaced directly with Drive Planning and its staff to evaluate, negotiate, and enter into the REAL Loan Agreements. (Dkt. No. 36-5, Ex. E at 5; Dkt. No. 36-7, Ex. G.) Where, as here, Plaintiffs undertook such direct involvement with Drive Planning to investigate the REAL Loan Agreements to arrive at their own investment decision, and transacted directly with Drive Planning, they cannot claim Defendants owed them a fiduciary duty.[11] The SACA does not improve upon Plaintiffs' dismissed breach of fiduciary duty claims and this claim, too, should also be dismissed.

      **d.     Plaintiffs Fail to Establish the Elements of an Unjust Enrichment Claim (Count VI)**

Plaintiffs' unjust enrichment claim makes no sense. Under New Jersey law, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). "Since a plaintiff must confer a benefit on the defendant to support an unjust

---

[11] Plaintiffs do not allege that Defendants were in a position "dominant or superior" to the Plaintiffs such that they should have, or even could have, uncovered Drive Planning's alleged fraud any better than the Plaintiffs, who interfaced directly with Drive Planning executives before entering the REAL Loan Agreements. *See F.G. v. MacDonnell*, 696 A.2d 697, 703–04 (N.J. 1997) (holding the "essence" of a fiduciary duty is when "one party places trust and confidence in another who is in a dominant or superior position").

enrichment claim, this element has been interpreted by New Jersey courts as a requirement that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim." *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (citation and quotations omitted).

In the March 24th Opinion, the Court held that Plaintiffs' unjust enrichment claim sought a return of commissions that Drive Planning paid to Defendants which "would constitute an ancillary proceeding reserved to the Receiver under the Receivership Order." (Dkt. No. 33 at 41–42.) Plaintiffs try to sidestep the Court's clear ruling[12] by, at once, disclaiming any "commissions paid by Drive Planning to Defendants" (Dkt. No. 36 at 209) and then vaguely recasts the as one for "compensation, including referral fees and other remuneration" that IWS received. (Dkt. No. 36 ¶¶ 201–04.) That claim flouts this Court's holding in its March 24th Opinion, and continues an ancillary proceeding reserved to the Receivership under the August 13, 2024 Receivership Order (Dkt. No. 10 ¶ 32.) The claim fails for at least two additional reasons. *First*, Plaintiffs have not alleged an "expectation of remuneration" in connection with the alleged benefit conferred on Defendants. *See VRG Corp.*, 641 A.2d at 526 (requiring plaintiffs to plead they "expected

---

[12] Despite "expressly disclaim[ing] any recovery in this Count of commissions paid by Drive Planning to Defendants" (Dkt. No. 36 ¶ 209), Plaintiffs continue to explicitly identify the purported commissions that IWS was paid based on Plaintiffs' investments identified in Exhibit G to the SACA (*id.* ¶¶ 205–07).

remuneration" from defendants "at the time [plaintiff] . . . conferred a benefit on defendant"). *Second*, Plaintiffs do not plausibly allege the kind of "relationship" with Defendants under which Defendants' failure to remit remuneration to them makes any sense. As discussed, *supra*, IWS provided the service of setting up CLLCs that offered certain tax advantages for investors. Beyond IWS providing Plaintiffs with introductory information and links to Drive Planning's website, Plaintiffs interacted directly with Drive Planning staff to evaluate and negotiate the REAL Loan Agreements. Defendants' limited interactions with Plaintiffs' negotiation of the REAL Loan Agreements, as alleged, is a far cry from the kind of "special relationship" necessary to confer liability against defendants for unjust enrichment.

### e.    Plaintiffs' Common Law Tort Claims Against Maniaci in his Individual Capacity Must be Dismissed

Maniaci cannot be held personally liable for negligent misrepresentation, unjust enrichment, and/or breach of fiduciary duty. Under New Jersey's "participation theory," a corporate officer acting in such capacity is not liable for the torts of the corporation unless the corporation owed a duty to the plaintiffs, the corporation delegated that duty to the officer, and the officer breached the duty by his own conduct. *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 272 (N.J. 2002). New Jersey courts that have applied the participation theory to hold corporate officers personally liable for tortious conduct primarily have done so in the case of intentional torts or physical personal injury. *Id.* at 304.

24

The "participation theory" does not apply to Maniaci. IWS's duty to the Plaintiffs by virtue of the services in setting up CLLCs did not extend to auditing or researching Drive Planning's corporate books and records. There could be no such duty delegated by IWS to Maniaci to carry out that task. Nor are there any allegations that Maniaci, by his own conduct, breached such delegated duty. In short, there are no allegations that Maniaci was involved in tortious conduct.

Nor are the torts alleged of the nature that New Jersey courts typically find personal liability for officers, such as intentional torts and physical personal injuries. *See*, *e.g.*, *Charles Bloom & Co. v. Echo Jewelers,* 652 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1995) (intentional conversion); *Robsac Indus., Inc. v. Chartpak,* 497 A.2d 1267, 1271 (N.J Super. Ct. App. Div. 1985) (malicious interference with contract, fraudulent misrepresentation, and defamation); *McGlynn v. Schultz*, 231 A.2d 386, 389 (N.J. Super. Ct. App. Div. 1967) (knowing conversion).

Finally, because the duties at issue, if any, arise from a contractual relationship between IWS and its clients involving the formation of CLLCs, the "substantial participation" theory cannot be used to confer personal liability. *Saltiel*, 788 A.2d at 275–76 (holding that "if the breach of the corporation's duty to the plaintiff is determined to be governed by contract rather than tort principles, the participation theory of tort liability is inapplicable"). Plaintiffs do not plausibly allege any duty bh Maniaci that extended beyond the scope of his agency and role with IWS.

25

Respectfully submitted, this 5th day of June 2026.

/s/ Eric W. Moran
Eric W. Moran (*Pro Hac Vice*)
Eric.Moran@gtlaw.com
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ  07932
T: (973) 360-7900

Justin K. Victor
Georgia Bar No. 105516
VictorJ@gtlaw.com
**GREENBERG TRAURIG, LLP**
Terminus 200, Suite 2500
3333 Piedmont Road, NE
Atlanta, Georgia 30305
T: (678) 553-2100

Justin M. Schettino (*Pro Hac Vice*)
Justin.Schettino@gtlaw.com
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ  07932
T: (973) 360-7900

*Attorneys for Defendants*
*Integrated Wealth Strategies, LLC*
*and Joseph C. Maniaci, Jr.*

26

## **CERTIFICATE OF COMPLIANCE AND SERVICE**

I hereby certify that I prepared the foregoing **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 9(b)** in Times New Roman, 14-point font in accordance with L.R. 5.1(C) and in accordance with the Court's Standing Order.  Further, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all registered attorneys of record.

 DATED: June 5, 2026

*/s/ Eric W. Moran*
Eric W. Moran

27