# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____

ARIES LEGACY, LLC, a Delaware
corporation, CHRISTIAN CARLSON, DEAN
RALPH SALERNO, ECRE1 LLC,
an Arizona corporation, HUCKLEBERRY          Case No: 1:25-cv-02118-VMC
GLAM, INC., an Arizona corporation,
individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

INTEGRATED WEALTH STRATEGIES, LLC.,
a New Jersey Corporation, and JOSEPH C.
MANIACI, JR., individually,

Defendants.
_____

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 9(b)

## I.    Introduction

In their Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Doc. 36, "SAC"), Defendants again seek to dismiss the claim brought pursuant to §12(a)(1) of the Securities Act of 1933 ("§12(a)(1) claim"), this time erroneously suggesting that it is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) ("Rule 9(b)") and that Plaintiffs failed to satisfy those requirements. They also seek, despite prior rejection by this Court, to dismiss the state law claims based on objections to the federal claim and assert arguments also previously rejected, about failure to satisfy pleading requirements. Defendants' Motion to Dismiss the Second Amended Complaint has no merit, and should be denied.

Defendants conspicuously avoid this Court's findings in its Order of March 24, 2026 which granted in part and denied in part Defendants' Motion to Dismiss Plaintiffs' first Amended Complaint.  The Court's Order fully resolved threshold issues in Plaintiffs favor that Defendants now seek to relitigate. This Court's March 24, 2026 Order Controls the Threshold Issues Defendants Reassert. (Doc. 33).

Amongst other actions, the Court dismissed Plaintiffs' §12 (a)(2) claim) <u>but kept the §12(a)(1) claim very much alive,</u> dismissing it only as to Plaintiffs Carlson and Salerno. (Doc. 33 at 25-29, 42).

1

Having failed to secure dismissal of the § 12(a)(1) claim, Defendants now raise a single new theory[1]: whether the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply.  The heightened pleading requirements of Fed. R. Civ. P. 9(b) do not apply, and, even the heightened pleading requirements apply, the four-element particularity test articulated by the Eleventh Circuit is fully satisfied in the Second Amended Complaint.

Based on its prior findings on the threshold issues raised herein and for the following additional reasons, there is no basis for the Court to grant Defendants' renewed Motion to Dismiss: (1) Rule 9(b) does not apply to the strict liability §12(a)(1) claim; (2) even if Rule 9(b) applies, Count I of Plaintiffs' Second Amended Complaint satisfies the heightened pleading requirements; (3) the Court retains federal-question jurisdiction over the state claims; and (4) the state claims are properly pleaded in accordance with this Court's Order granting Plaintiffs leave to amend.

## II.    Standard of Review

In ruling on a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Cisneros v. Petland, Inc.,* 972

---

[1]  This Court expended considerable thought, and effort and time. Judicial efficiency requires a cut off or this becomes a Motion for reconsideration which is barred because untimely.  To hold otherwise waste this Court's time and resources.

F.3d 1204, 1210 (11th Cir. 2020), *citing Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1066 (11th Cir. 2017). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007).

For complaints alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006); *see also Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025).

**III. Arguments**

**A. This Court's prior findings on four threshold issues guide the Court's analysis.**

3

Defendants' Motion to Dismiss the SAC relitigates issues that have already been resolved in Plaintiffs' favor and does not present any new viable challenges. Defendants fail to even mention the Court's March 2026 Order and simply reassert arguments that were rejected in that Order. (Doc. 33).

First, the Court found its August 13, 2024 Order appointing a receiver in the SEC action against the Drive Planning parties ("Receivership Order")[2] <u>does not bar the instant action because it "does not 'involve' Receivership Property" and stems from harm done directly to investors.</u> (Doc. 33 at 14-15). Though the Drive Planning parties were certainly bad actors, the Court found they are not indispensable parties to this action. *Id.* As the Court explained, though the harm alleged stems indirectly from activities of the Drive Planning parties, that does not mean the case "involves" them, and excluding them is not a basis for dismissal. *Id.* The Court also rejected the notion that the instant action involves "agents" of the Drive Planning parties being sued in that capacity. *Id.* Defendants herein, the Court held, are not agents but are, rather, parties who simply acted for the benefit of Drive Planning. As such, dismissal at this juncture was not warranted.

Second, the Court found that the Drive Planning parties (Drive Planning LLC and Russell Todd Burkhalter, its founder) are not indispensable parties herein

---

[2] *Sec. & Exch. Comm'n v. Drive Plan., LLC*, No. 1:24-cv-3583-VMC (N.D. Ga, filed Aug. 13, 2024)(the "SEC Action"), (Doc. No. 10 ¶ 32).

because Defendants failed to establish that complete relief cannot be granted without them pursuant to Fed. R. Civ. P. 19(a)(1)(A). (Doc. 33 at 18-21). Moreover, the Court found that failure (and an inability) to join the Receiver or the Receivership Defendants would not impair or impede the interests of those parties pursuant to Rule 19(a)(1)(B) because they have not claimed an interest or sought to intervene. (*Id.* at 21-22). Because a receiver's decision not to claim an interest is sufficient to end the inquiry pursuant to Rule 19(a)(1)(B) regarding necessary joinder, the Motion to Dismiss for failure to join a required party was denied.

Third, in its March 2026 Order, this Court found that Plaintiff Aries is a "statutory buyer" and Defendants IWS and Maniaci are "statutory sellers" under §12(a) of the Securities Act. The Court found that Defendants satisfied the statutory definition of "Seller" because Plaintiffs alleged they solicited a purchase motivated at least in part by their own financial interest and also alleged a causative effect between the solicitation and the purchase. (Doc. 33 at 31-37). The Court emphasized that a "Seller" need not own the securities at issue, and it is sufficient to allege that they "urged" or "persuaded" another to buy a particular security without alleging the solicitation was targeted, personal, or individualized.[3]

---

[3] Though the Court dismissed the §12(a)(1) claim as to Plaintiffs Carlson and Salerno because they were not "purchasers" and therefore lacked standing, it denied Defendants' Motion to Dismiss the §12(a)(1) claim as to Plaintiff Aries. (Doc. 33 at 37-38; 42).

Fourth, the Court rejected Defendants' claim that the §12(a)(1) claims are untimely based on the three-year repose period and the one-year statute of limitations. (Doc. 33 at 25-30). The Court explained that the date of the "bona fide offer to the public" for purposes of the statute of repose is determined based upon the date the security was *last* offered to the public. *Id.* To find otherwise would enable individuals to run down the statute for three years after the initial offer and then sell unregistered securities with abandon. *Id.* As such, because the SAC did not allege a date of last offer any earlier than June 10, 2024, dismissal was not proper based upon the three-year statute of repose. *Id.* As to one-year statute of limitations, Defendants' claim was moot because Plaintiffs had limited their claim to transactions that occurred on April 18, 2024 and June 5, 2024 – both within a year of the initiation of this action on April 17, 2025. *Id.*

To the extent Defendants reassert these four arguments, the Court has already rejected them and should deny the Motion on the same grounds.

**B. Defendants' argument in favor of dismissing the §12(a)(1) claim (Count I) is premised upon the false notion that such a claim is subject to Rule 9(b) pleading requirements.**

Defendants open their latest Motion to Dismiss with the misleading assertion that this Court previously found Plaintiffs' §12(a)(1) claim to fall short of Rule 9(b)'s pleading requirements. (Doc. No. 39-1 at 2). To the contrary, Defendants have, until now, not raised this issue regarding the §12(a)(1) claim, and the Court's March 2026 Order does not address it. Though two related matters have

6

been dismissed by this and another Court in part because of a failure to satisfy Rule 9(b) requirements, those cases are distinguishable.

1.  <u>The heightened pleading requirements of Rule 9(b) do not automatically apply to Section 12(a)(1) claims.</u>

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Count I of Plaintiffs' SAC asserts liability under Section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(1) — a strict-liability provision imposing liability on any person who "offers or sells a security" in violation of the registration requirements of Section 5.  No element of Section 12(a)(1) requires proof of scienter, reliance, or misrepresentation. *See Pinter v. Dahl*, 486 U.S. 622, 644 n.21 (1988) (Section 12(a)(1) "imposes liability based solely on the fact of sale"). Because Count I does not "allege fraud or mistake," Rule 9(b) does not apply.

In support of their argument that Rule 9(b) pleading requirements apply to Plaintiffs' §12(a)(1) claim, Defendants mischaracterize a long list of allegations to suggest that "Plaintiffs allege throughout the [SAC] that Defendants fraudulently "induced" them to invest in the REAL Loan Agreements. (Doc. 39-1 at 7). The word "fraudulently" is gratuitously added by Defendants as the paragraphs cited, even if they alleged "inducement," do not allege "fraudulent" inducement. (Doc. 36 ¶¶ 4, 20, 71, 74, 82-83, 93, 112-114).

7

Many paragraphs Defendants cite do not allege fraudulent conduct by Defendants at all. Some use the word "fraudulent" only to describe the Drive Planning Ponzi scheme or the broader fraudulent enterprise, while others concern separate causes of action and are not incorporated as a fraud theory into Count I. (Doc. 36. ¶¶ 17, 128, 130, 133-35, 149, 154-155, 188). Defendants therefore distort the SAC by recasting Plaintiffs' allegations as an attempt to accuse them of fraud. Count I does no such thing. To the contrary, Plaintiffs expressly excluded and disclaimed any allegation in Count I that could be construed as sounding in fraud, intentional misconduct, or reckless misconduct. *Id.* ¶ 104.  To the extent any isolated background allegation uses the phrase 'fraudulently induced,' Count I expressly disclaims any fraud-based theory and proceeds only on the unregistered-sale theory.

In 1995, Congress enacted the Private Securities Litigation Reform Act (PSLRA) to impose heightened pleading requirements on Rule 10b-5 actions. 15 U.S.C. §78u-4; *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 US 308, 127 S. Ct. 2499, 2502 (2007)**.** The PSLRA does not impose that requirement on claims, such as Count I herein, brought under the Securities Act of 1933 ("Securities Act") though the circuits have split as to whether claims, even if they do not plead fraud, are subject to Rule 9(b)'s heightened pleading standards.  Section 11 of the Securities Act creates a cause of action against persons preparing and signing

materially misleading registration statements. 15 U.S.C. § 77k(a). A registration statement can be misleading either by containing an untrue statement or by omitting facts that are necessary to prevent other statements from being misleading. *Id.* There is no state of mind element to a § 11 claim, and liability is "virtually absolute, even for innocent misstatements." *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1278 (11th Cir. 2006).

Defendants misrepresent the holding in *Wagner* to suggest that in the Eleventh Circuit, all claims brought pursuant to §12(a)(2) are subject to Rule 9(b) if they allege false representations or misleading omissions. (Doc. 39-1 at 8). To the contrary, the holding in *Wagner* is not quite so broad.

In *Wagner,* the court held that Rule 9(b) applies when the misrepresentation justifying relief under the Securities Act *is also alleged to support a claim for fraud under the Exchange Act and Rule 10(b)-5. Wagner* at 1277 (*emphasis supplied*). The *Wagner* court went on to state that if plaintiffs bring a § 11 or § 12(a)(2) claim without alleging the misrepresentation at issue in the claim was fraudulent, they will avoid the heightened pleading requirements of Rule 9(b). *Id.* at 1278. In *Wagner,* Rule 9(b) was applied to a non-fraud security claim because the complaint alleged that the misrepresentation at issue in the nonfraud claims were the beginning of, or otherwise part of, the predicate fraud for the Rule 10b-5

9

securities fraud claim. *Id.* There is no 10b-5 claim alleged herein, so the reasoning in *Wagner* does not apply.

Other circuits have similarly held that claims pursuant to Section 11 which, like claims pursuant to Section 12(a)(1), sound in strict liability are not subject to Rule 9(b) as long as they are not premised on allegations of fraud.  *See, e.g. Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir. 2004).  The Ninth Circuit has reached the same conclusion for claims brought pursuant to Section 12(a)(2). *See, e.g., In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404–05 (9th Cir. 1996). The logic applies with even greater force to Section 12(a)(1), which, unlike Section 11 or Section 12(a)(2), does not even require proof of a material misstatement or omission.

The underlying rationale for the court's application of heightened pleading requirements in *Wagner* and other Eleventh Circuit decisions is the need to address problems associated with the so-called  "shotgun pleading." *Wagner,* 464 F.3d at 1279. In a shotgun pleading, every antecedent allegation is incorporated by reference into each subsequent claim for relief or affirmative defense. *Id.* The problem that arises with such pleadings is that the court is unable to determine the connection between the pleaded facts and each generally pled claim. The "shotgun pleading" problem does not exist here.

In contrast to *Wagner* and other similar cases, the complaint here does not incorporate by reference every single preceding allegation into each count. Rather, though the general allegations about the scheme are incorporated into and relevant to each count, Plaintiff added, for each individual count, factual allegations that are specific to that count alone.  (*See* SAC at 24-25; 26-31; 32-35; 36-38; 39-43; 43-45).

As such, the problems inherent in a proverbial shotgun pleading do not exist here, as Plaintiff has made it abundantly clear which allegations (sometimes repeated for a separate count to ensure clarity) connect to which cause of action. Plaintiffs have drafted the SAC with particularity and care to avoid just the sort of problems attached to shotgun pleadings.

Though Defendants cite to the Eleventh Circuit's recent decision in *Otto Candies v. Citigroup to* support their argument that Rule 9(b) should apply, the court in *Otto* applied Rule 9(b) for one "basic" reason:  "The plaintiffs allege fraud, so they must satisfy the heightened pleading standards of Rule 9(b)." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025).

The court then expressly recognized that different claim types carry different pleading requirements, holding that because "the plaintiffs here do not bring securities-fraud claims, these requirements [the PSLRA's] are inapplicable." *Id.* at 1178–79.  *Otto Candies,* which involved exclusively fraud-based claims, thus

stands for the unremarkable proposition that heightened pleading standards are keyed to the nature of the claim, not the subject matter of the underlying transaction.

Nowhere in the facts alleged to support the 12(a)(1) claim (Counts I) does Plaintiff suggest that Defendants made their misrepresentations or omitted material facts with knowledge or intent that statements were false or misleading. Nowhere in those common facts do Plaintiffs allege anything remotely related to the sort of scienter required for a fraud claim. Scienter is neither relevant nor necessary to the causes of action alleged in Count I, and it is the Defendants who seek to impose pleading requirements for facts that are not required.[4]

   2. **Even if the pleading requirements of Rule 9(b) are applied to Plaintiff's' 12(a)(1) claim, Count I satisfies those requirements.**
Defendants argue if Rule 9(b) applies, four elements must be present to satisfy the particularity requirement: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. *Otto Candies,*

---

[4] No Eleventh Circuit decision has ever applied Rule 9(b) to a Section 12(a)(1) claim. Defendants invite this Court to be the first. That invitation should be declined. The word "induced" in the SAC describes statutory-seller conduct under *Pinter v. Dahl*, 486 U.S. at 647 and does not transform a strict-liability registration claim into one "alleging fraud."

137 F.4th at 1178.  In other words, Rule 9(b) requires that plaintiffs plead the who, what, when, where, and how of the alleged wrongdoing.

Defendants neglected to mention that the court in *Otto Candies* rejected an overly burdensome application of Rule 9(b) pleading requirements to the element of scienter: "Those courts requiring a heightened standard for pleading knowledge have gotten it wrong—there is no reason to import the PSLRA's standard onto Florida common-law fraud claims." *Id.* at 1179. If the heightened standard for pleading knowledge should not apply to an actual common law state fraud claim, there is certainly no basis for applying it to the federal 12(a)(1) strict liability claim.

The court in *Otto Candies* explained in detail just how much particularity is required under Rule 9(b) for allegations of knowledge, cautioning that "its application 'must not abrogate the concept of notice pleading.'" *Id.* at 1178, *quoting Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (emphasis added).

Courts should "hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Otto Candies,* 137 F.4th at 1178, *citing Gose v. Native Am. Servs. Corp.,* 109 F.4th 1297, 1318

13

(11th Cir. 2024). "A defendant has knowledge of an underlying fraud if it has a general awareness that its role was part of an overall improper activity." *Otto Candies,* 137 F.4th at 1178, *citing Gilison v. Flagler Bank,* 303 So. 3d 999, 1003 (Fla. Dist. Ct. App. 2020). The court concluded that even under Rule 9(b), which applied to actual fraud claims, the "conditions of a person's mind," including knowledge, "may be alleged generally." *Otto Candies,* 109 F.4th at 1178, *citing Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC,* 904 F.3d 1197, 1215 (11th Cir. 2018) (holding in an "adjacent context" that a plaintiff "need not have pled [the defendant's] knowledge of the relevant contracts with specificity, even assuming Rule 9(b) applies").

Pursuant to the guidelines set forth in *Otto Candies,* Plaintiffs adequately pled the conditions of Defendants' state of mind, including knowledge, assuming arguendo the heightened standards apply.  Plaintiffs have pled more than established a "general awareness" by Defendants of their role in the alleged improper activity and the "particular circumstances" for which they will have to prepare a defense at trial. *See Otto Candies,* 109 F.4th at 1178 (*citations omitted*).

Plaintiffs have identified, with a high degree of precision – even higher than required under *Otto Candies* -- the "who, what, when, where, and how" regarding Defendants' alleged misleading statements and omissions. Satisfying all four prongs of the particularity test set forth in *Otto Candies,* Plaintiffs identified

14

numerous false statements and omissions attributable to Defendants, and they specified the manner in which those false statements and omissions were made, when they were made, by whom, and to whom. For example, the SAC identifies several communications in which Defendants made representations that induced Plaintiffs to purchase the securities. *See* ¶¶ 81-84 (Angelo Sandone sent an email in February 2024 representing that a forensic accountant had reviewed the books and he was satisfied; he also represented that Defendants had personally invested in the Drive Planning products; text exchanges between Salerno and Maniaci indicate Maniaci's assurance that a close friend in Commercial real estate had reviewed the holdings). The dates and times of the alleged representations are identified in the allegations, *Id.* The allegations also specify how the statements were misleading, as Sandone falsely – even recklessly --  suggested Defendants had conducted due diligence. *Id.* And, satisfying the fourth prong, Plaintiffs have clearly alleged the benefit obtained by Defendants as a result of their conduct – referral fees and commissions from the Ponzi scheme. (¶¶ 38, 43, 53, 70, 139, 149).

There is no mystery as to the basis for the claims in Count I, and there is no basis for Defendant's' suggestion that Plaintiff's' allegations are not sufficiently particular, even under Rule 9(b). As the court emphasized in *Otto Candies,* "Rule 9(b) is demanding. But it is not a straitjacket." 137 F.4th at 1201. Significantly, the court in *Otto Candies* suggested that Rule 9(b) "should be relaxed" to aid plaintiffs

15

alleging "prolonged multi-act schemes" as long as the plaintiffs allege "at least some examples" to "lay a complete foundation for the rest of [their] allegations." *Id*. at 1201 (*citations omitted*). To do otherwise, the court held, would "abrogate the concept of notice pleading," which the court cannot do.

A $300 million Ponzi scheme affecting 2,000+ victims, like the one described herein, is just the sort of matter contemplated by *Otto* and other cases when advocating relaxation of the Rule 9(b) pleading standards. Even under more stringent interpretations of Rule 9(b), the SAC is sufficient. As such, the Defendants' 9(b) arguments should be rejected and their motion denied.

### 3. Contrary to Defendants' suggestion, the instant matter is not "on all fours" with *Hauger.*

This Court's dismissal of *Hauger,* a related matter, provides little guidance on the issue raised in Defendants' latest Motion to Dismiss as that case is readily distinguishable. In its Order dismissing the amended complaint in *Hauger,* the Court stated the Plaintiff failed to specify what statements were made, who made them, where they were made, how they were made, and why they were false at the time they were made. *See Hauger v. SDWC Fin., LLC*, 1:25-cv-01058-VMC, (Doc. No. 32 at 24-25) (N.D. Ga. Nov. 3, 2025). Noting that without particularized allegations, the Court has no basis to determine the substance of the alleged fraud, the Court emphasized that Plaintiff's' Amended Complaint failed to refute an

16

individual Defendant's' assertion that she was unaware of Drive Planning's fraudulent activity. *Id.*

In contrast to *Hauger,* Plaintiffs herein have been quite specific in identifying statements made, by whom, how, and why they were false at the time they were made, and there is no suggestion by Defendants herein that they were misled just as Plaintiffs were. As explained in Section B., 2, above, Plaintiffs specifically identified the employee of IWS who sent the February 13, 2024 email representing that the company had conducted due diligence. SAC ¶81. Plaintiffs specifically identified Joseph Maniaci as the individual who sent the December 27, 2023 text message assuring further due diligence and confirming that the collateral property was "all good." SAC ¶84.

*Hauger* was decided by this Court on November 3, 2025. The Court's Order in this case on Defendants' Second Motion to Dismiss was issued five months later and, the *Hauger* ruling notwithstanding, this Court did not dismiss Plaintiff's' §12(a)(1). *Hauger* was dismissed because of the absence of affirmative allegations that Defendants made sufficient representations to render the company a "seller" under §12(a). By contrast, Plaintiffs herein make three affirmative allegations about material and significant "acts" – allegations absent in *Hauger* complaint.

First, Plaintiff alleged that IWC set up charitable LLCs ("CLLC's") to induce clients to invest in Drive Planning products. (SAC ¶¶4–5). Second,

Plaintiffs alleged that Angelo Sandone, a financial consultant employed by IWS, made an affirmative representation to Carlson and Salerno that a forensic review had been conducted and Drive Planning's books "checked out." (SAC ¶81). Third, Plaintiffs alleged that Maniaci personally vouched for Drive Planning's land holdings based upon a review by a close friend in commercial real estate. (SAC ¶159).

Importantly, this Court has already evaluated these exact allegations and determined they were sufficient to establish that Defendants could be liable under § 12(a)(1) as statutory sellers. (Doc. 33 at 34-35). In the March 2026 Order, Judge Calvert held that the Sandone forensic-accountant email, the Maniaci advisory email, and in-person REAL brochure presentations "constitute active solicitation of investors sufficient for Section 12(a)." *Id*. These are the same facts re-pleaded in the SAC, with additional specificity. Defendants' argument that these allegations somehow fail to satisfy Rule 9(b)'s "who/what/when/where/how" requirements for the same conduct cannot be reconciled with this Court's prior Order. (Doc. 33).

The mere fact that the same judge has dismissed a related case does not mean that that judge will – or should – dismiss all matters stemming from the Drive Planning Ponzi scheme. Like all cases, these matters turn on particular facts, and not ultimate results from other matters.

**C. Because Plaintiffs' claim pursuant to Section 12(a)(1) survives Defendants' Motion to Dismiss, Subject Matter Jurisdiction is Secure.**

As this Court noted in its March 2026 Order, it retains jurisdiction of the state law claims as long as a federal claim remains and the state law claims are adequately pleaded. (Doc. 33 at 38). The Securities Act of 1933 creates federal cause of action. *Merrill Lynch v. Manning*, 578 U.S. 374 (2016). As Plaintiffs have explained in Sections A. and B., above, Count I (the claim under the Securities Act) should survive a Motion to Dismiss. Pursuant to 28 U.S.C. § 1367(a), this Court automatically has supplemental jurisdiction over related state law claims. Even if Count I were dismissed, the Court has discretion to retain jurisdiction over the related state claims. 28 U.S.C. § 1367(c)(3). Factors to consider are judicial economy and convenience and fairness. Here, because the SEC enforcement action against the Drive Planning parties is pending in the same district, judicial economy and the strong interconnection between the state claims and that action favors retention of jurisdiction.

Moreover, personal jurisdiction over IWS and Maniaci is preserved, as federal question jurisdiction renders a diversity analysis unnecessary. Personal jurisdiction is established pursuant to Georgia's long-arm statute. O.C.G.A. § 9-10-91. Defendants, while physically located in New Jersey, purposefully availed themselves of the laws and markets of Georgia by marketing, soliciting, and selling investments in a Georgia-based enterprise. Defendants conducted business with the Georgia LLC, induced investors to move funds into Georgia and a Georgia

corporation(s), and knowingly enabled and participated in the funneling of investor capital into a fraudulent enterprise headquartered in the State of Georgia. (*See* SAC ¶ 17).

**D. Defendants fail to establish any basis for dismissing the state law claims alleged in Counts II through VII of the Second Amended Complaint.**

1. <u>The SAC cures any defects in the claims alleging violations of the New Jersey Uniform Securities Law (NJ Rev Stat §§ 49:3-47; 49:3-71(d) (2024) (Counts II and III).</u>

In its March 2026 Order, the Court found that the Rule 9(b) heightened pleading standards apply to claims under the NJUSL's civil liability provision. (*See* Doc. 33 at 39) (*citations omitted*). Specifically, the Court found that Plaintiffs had done little more in their prior Complaint than restate the provisions of the act, and the pleading was conclusory.

In the SAC, Plaintiffs have corrected these defects. As to Count II, to establish "seller" status pursuant to NJUSL, the SAC alleges facts to support financial motivation (IWS earned commissions and fees, SAC ¶ 32, 38, 43, 54, 55, 68, 70, 139(e)) and solicitation of each named Plaintiff (SAC ¶ 82, 83, 93(c), 112-116, 128-135). The cases cited by Defendants in their Motion to Dismiss are inapt, as they address passive distributors or unrelated parties. *See Roll v. Singh,* Civil Action No. 07-cv-04136 (FLW), 2008 U.S. Dist. LEXIS 50125, at *29 (D.N.J. June 26, 2008) (finding in that case "because all other elements in connection with [the] federal securities fraud claim (except for loss causation) have been adequately pled,…New Jersey based securities fraud claim is pled adequately to survive a

motion to dismiss"); *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 653 F. App'x 553, 555 (9th Cir. 2016) (finding in that fact pattern "board members are not vicariously liable to [a plaintiff] because they did not authorize, direct, or otherwise meaningfully participate in making the alleged misrepresentations."). Plaintiffs have also satisfied the privity requirement, alleging with particularity that IWS created CLLCs, established them as the purchasing vehicle, and established a direct relationship among the investor, the CLLC, and IWS. *See Pabon v. Hackensack Auto Sales,* 164 A.2d 773 (N.J. Super. App. Div. 1960). NJUSL extends to solicitors regardless of strict privity. *Kaufman v. i-Stat Corp.*, 754 A.2d 1188 (N.J. 2000).

Defendants' suggestion that they should avoid liability because they were "investment advisors only" is unavailing. Plaintiffs have specifically alleged that IWS went well beyond giving advice – creating the CLLCs, transmitting Drive Planning marketing, and vouching personally for the investments via Angelo Sandone. *Cf. Wiley v. Hughes Cap. Corp.,* 746 F. Supp. 1264 (D.N.J. 1990) (distinguishable because defendant was a bare consultant with no vehicle-creation role).

Regarding the cause of action presented in Count III, against Defendant Maniaci, Plaintiff's sufficiently alleged control person liability.  To do so, three elements must be established: (1) a primary violation exists; (2) defendant

21

controlled the person committing the primary violation; and (3) defendant had knowledge of or participated in the violation. *Kaufman v. i-Stat Corp.*, 754 A.2d 1188 (N.J. 2000). The primary violation is alleged in Count II, where Plaintiffs allege IWS committed a direct violation as seller of unregistered securities (N.J.S.A. 49:3-60). **SAC ¶** That primary violation is established for purposes of Count III. Plaintiffs' established "control" by alleging that Maniaci is a principal at IWS; he personally directed REAL investment sales; he was copied on or directed all investor communications; and he created CLLCs for clients as a core business function. These are not bare conclusory allegations of "control" — they are specific operational facts establishing that Maniaci directed the very IWS activities that constituted the primary violation. Lastly, Plaintiffs have established "knowledge and participation" by alleging that Maniaci personally made the "All good" collateral property statement and sent the December 27, 2023 text message. He did not passively supervise; rather, he was the primary communicator with investors. This direct participation establishes the knowledge and participation element independently.

Control person liability is established by Maniaci's own words and documented role, not merely by his title. Dismissing Count III would require the Court to credit Maniaci's characterization of himself as a passive observer — a characterization the SAC flatly contradicts.

22

2. <u>The SAC cures any defects in Plaintiffs causes of action for negligence/negligent misrepresentation and breach of fiduciary duty (Counts IV and V).</u>

In its March 2026 Order, the Court found that the claim for professional negligence/negligent misrepresentation against Defendant IWS was adequately pleaded but dismissed Count IV against Maniaci individually with leave to amend in order to clarify whether IWS was acting through Maniaci or whether Maniaci committed any personal misconduct. (Doc. 33 at 39-40). In New Jersey, corporate officers are liable for their own tortious acts.[5] *Charles Bloom & Co. v. Echo Jewelers*, 652 A.2d 1238, 1243 (N.J. Super. Ct. App. Div. 1995). The defect has been cured in the SAC, which specifically alleges that Maniaci directed or was copied on the Sandone forensic-accountant email dated Feb. 13, 2024. (SAC ¶81). That allegation establishes that Maniaci was acting through IWS, providing

---

[5] In a footnote, this Court noted that while parties assumed New Jersey law governed, Georgia law might apply. (Doc. 33, FN 6). The SAC addresses this directly. New Jersey law governs because: (a) IWS is a New Jersey LLC organized and domiciled in New Jersey; (b) the advisory relationship was formed in New Jersey, where Maniaci operates; (c) CLLC structuring services were performed from New Jersey; and (d) the Sandone email, the central misrepresentation, originated in New Jersey. Under Georgia's choice-of-law rules, tort claims are governed by the law of the place of the wrong. *Risdon Enters., Inc. v. Colemill Enters., Inc.*, 172 Ga. App. 902 (1984). The alleged wrong, IWS/Maniaci's misrepresentations and advisory relationship, originated in New Jersey. NJ law governs.
*Belt-and-suspenders:* Even under Georgia fiduciary duty law, IWS/Maniaci assumed a duty by undertaking to advise Plaintiffs and representing that due diligence had been performed. *CapitalSouth Partners Fund I, L.P. v. Morrison*, 246 Ga. App. 695 (2000) (duty arises from assumption of advisory role).

precisely the clarification the Court required. Maniaci's texts and personal assurances make him individually liable.

In its prior Order, the Court also dismissed with leave to amend Count V (Breach of Fiduciary Duty) because Plaintiffs failed to sufficiently plead that Defendants owed a fiduciary duty to Plaintiffs. (Doc. 33 at 40). The Court noted that Plaintiffs had alleged Defendants were acting as agents for Drive Planning, not for Plaintiffs. *Id.* at 40-41. The Court also noted that Plaintiffs identified no allegations plausibly establishing that they relied on IWS for corporate due diligence, audit reports, or financial analyses regarding Drive Planning or the REAL Loan Agreements and instead point only to the fact that IWS marketed REALs to them. *Id.* The Court granted Plaintiffs leave to amend Count V to allege facts that create a plausible inference that, under the governing law, each Plaintiff placed trust and confidence in Defendants. *Id.*

To correct the first defect identified by the Court – that Plaintiffs had failed to allege a fiduciary duty -- the SAC eliminated the language alleging that IWS was acting as agents for Drive Planning and reframes the relationship to allege that IWS held themselves out as and acted as Plaintiffs' independent financial advisor. (SAC ¶¶ 179, 183, 187). To correct the second defect -- that Plaintiffs had failed to allege reliance upon IWS for due diligence – the SAC included the allegation that

24

Sandone represented to Carlson that a forensic accountant had reviewed Drive Planning's books and they all checked out. (SAC ¶ 81).

3. <u>The SAC cures any defects in the unjust enrichment claim (Count VI).</u>
   The only defect cited by the Court regarding Count VI related to the relief requested: a return of commissions Drive Planning paid to Defendants. (Doc. 33 at 41-42). The Court noted that such relief would constitute an ancillary proceeding reserved to the Receiver under the Receivership Order, and granted Plaintiffs leave to amend to clarify the relief sought. *Id.* The SAC cured the defect, and Plaintiffs now seek restitution of investor funds rather than any commissions Drive Planning paid to IWS. (SAC at 45). This reframing avoids the ancillary proceeding bar.

In their Motion to Dismiss the SAC, Defendants argue that Plaintiffs' alternative pleading of unjust enrichment is premature because there is an adequate remedy at law. Alternative pleading is permitted pursuant to Fed. R. Civ. P. 8(d)(2). Where recovery on the alternative theories is uncertain, an unjust enrichment count must survive a motion to dismiss. *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712 (D.N.J. 2011).

Dated: July 10, 2026

Respectfully Submitted,

/s/            Ross M. Good

Ross M. Good, Esq.

The Good Law Group

800 E. Northwest Hwy, Ste 814

Palatine, IL 60074

Ph: (847) 577-4476

Fax: (800) 709-1179

(IL Bar No. 6312917;

FL Bar No. 0116405)

Ross@thegoodlawgroup.com

Shawn M. Good Esq.

(IL Bar No. 632932)

The Good Law Group

800 E. Northwest Hwy, Ste 814

Palatine, IL 60074

Ph: (847) 577-4476

Fax: (800) 709-1179

Shawn@thegoodlawgroup.com

Jeffrey Sonn, Esq.

Sonn Law Group PA

19495 Biscayne Blvd Suite 607

Aventura, Fl 33180

Tel 305-912-3000

Fax 786-485-1501

FL Bar No. 773514

Jsonn@sonnlaw.com

Brian B. Pastor, Esq.

Sonn Law Group

PA 3455 Peachtree Rd NE, Ste. 500

Atlanta, GA 30326

Tel: 305-912-3000 Ext. 538

Fax: 404-607-7121

GA Bar No. 565860

26

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that I prepared the foregoing PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 9(b) in Times New Roman, 14-point font in accordance with L.R. 5.1(C) and in accordance with the Court's Standing Order. Further, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all registered attorneys of record.

DATED: July 10, 2026

/s/ Ross M. Good